

**FILED**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

JUL 09 2019 ᏦᏏ

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

CANDACE METCALF, PRO SE

        PLAINTIFF,

vs.

WILBUR ROSS,
DEPARTMENT OF COMMERCE

        DEFENDANT.

)
)
)
)
)
)
)

**1:19-cv-04623**
**Judge Robert W. Gettleman**
**Magistrate Judge Jeffrey Cole**

Jury Trial Demand: **Yes**

---

### COMPLAINT OF FEDERAL EMPLOYMENT DISCRIMINATION & RETALIATION

#### **PARTIES**

1. Plaintiff, is a muslim woman wearing a headscarf and resident of Cook County, Illinois, and is a female aged (39), is, and who graduated with a Masters in Sociology Fall of 2018 with a 3.5 GPA, with $140,000+ student loans owed and also holds a Bachelors in Sociology, also having great recommendations. Plaintiff was briefly employed by the United State Census Bureau during the relevant time period within this complaint. Plaintiff was employed July 23rd, 2018 through November 2018, approximately 3.75 months. The plaintiff is representing herself *(pro se)* in this proceeding. *PO BOX 2478, Bridgeview, IL, 60455. (708)789-3691.*

2. At all times pertinent, Plaintiffs' previous employer, pursuant to Title VII of the Civil Rights Act of 1964 (as amended), 42 U.S.C. sec 2000 (et. seq), the Americans with Disabilities Act of 1990, as codified, 42 U.S. Code sec 12101; 42 U.S.C. sec 12111 to 12117, and sections 501, 504, 505, and 508 of the Rehabilitation Act of 1973; Executive Order(s) 13548, 13078, 13124,

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

13163, 13164; Equal Employment Opportunity Management Directive 715; 29 C.F.R. sec 1615 et seq; the First Amendment-Amendment I; and 5 U.S. Code sec 2302, in violation of the No Fear Act, and the Inspector General Act of 1978, is the Chicago Census 2020 Decennial Office of the Census Bureau, a division of the Department of Commerce, has and is seeking to hire 500,000+ qualified employees and the agency only employees 0.09% individuals with targeted disabilities at the Chicago office. Agency Attorney Chief Paul S. Redpath, US Department of Commerce, US Census, Office of Civil Rights, 1401 Constitution Ave, N.W., Room C200, Washington, D.C., 20230. (202)-482-5949. She identified the following individuals as being responsible for or otherwise involved in the various incidents that comprise her claims:

- Regional Assistant Director: Rosa Estrada in this complaint called "the director"
- Regional Recruiting Coordinator: Alicia Daniels "the supervisor"
- Regional Director: Marilyn Sanders
- Regional Administration Coordinator: Renaldo Nicks
- Other Regional Management Staff: Debra Stanley
- HR Specialist Jodie Wysokie and Linda Buckner
- HR employee Carol Reckamp

Administration, under the Department of Commerce, Wilbur Ross, Secretary.


## JURISDICTION AND VENUE

3. This Court has original jurisdiction in this action pursuant to 28 U.S.C. Sections 1331 and 1343 and 42 U.S.C. Section 2000e-5, inasmuch as the matter in controversy is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e et seq. And the Americans with Disabilities Act of 1990, as codified, 42 U.S. Code sec 12101; 42 U.S.C. sec

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

12111 to 12117, and sections 501, 504, 505, and 508 of the Rehabilitation Act of 1973, Executive Order(s) 13548, 13078, 13124, 13163, 13164; Equal Employment Opportunity Management Directive 715, 5 U.S. Code sec 2302, 29 C.F.R. sec1615 et seq, and the regulations governing federal employees. This District possesses venue of this matter pursuant to 42 U.S.C. Section 2000e-5(f). The jurisdiction of this Court is invoked to secure protection and redress deprivation of rights guaranteed by federal law, which rights provide for injunctive relief and other relief for illegal employment discrimination. The amount in controversy in this action exceeds the jurisdictional limits of this Court.

## GENERAL FACTUAL ALLEGATIONS

4. Plaintiff filed her second formal complaint on or about **December 2018** with the DOC Census Office of Civil Rights ("EEO") complaint in which she alleged that numerous Agency officials had subjected her to disparate treatment, a hostile work environment, and retaliation in violations of Title VII of the Civil Rights Act of 1964, ADA, and the Rehabilitation Act; because of her religion (Islam/Muslim) w/ (wearing a muslim headscarf) discrimination, and disability discrimination (PTSD, Anxiety Disorder, and ADHD), and race (white). She also alleged that the Agency failed to provide her with a reasonable accommodation or engage in the accommodation process for her disability. On or about **April 2018**, Plaintiff filed her first notice of retaliation with the EEO DOC Census Office of Civil Rights during the application process. On or about **March 2018**, Plaintiff filed her first notice of discrimination because of her religion (Islam/Muslim) and disability (PTSD) discrimination, and retaliation with the DOC Census Office of Civil Rights. Plaintiff filed an appeal to combine the complaints on or about **December 2018**, but Plaintiff has not received a response. )

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS


5. On or about **October 2018**, Plaintiff received the ROI from the first EEO complaint (EEO Complaint No. 63-2018-00121) and the right to request a hearing or for the issuance of a final agency decision pursuant to 29 CFR Sec. 1614.108(f). Plaintiff was deterred from filing hearing request due to defendants intimidating plaintiff by calling police **October 10th, 2018**, and because of Plaintiffs participation in protected activity making reports to the OIG, EEO activity, and requesting accommodations for disability. **November 27th 2018**, plaintiff received final agency decision without hearing which states "We find no violation of Title VII or the Rehabilitation Act with respect to the matters alleged." Plaintiff filed an appeal (EEOC Appeal No. 2019002419) with the EEOC **December 2018**. **December 2018** Plaintiff filed a second EEO complaint (Complaint No. 63-2019-00034D). Plaintiff received ROI from the second EEO complaint **June 2019** and the right to request a hearing or for the issuance of a final agency decision pursuant to 29 CFR Sec. 1614.108(f) the federal agency for issuance of a final agency decision. Plaintiff has now exhausted the 180 day requirement and can proceed to file a civil suit in federal court under 29 C.F.R. Sec. 1614.407. Defendant has exhausted administrative processing, all matters pursuant to 29 CFR Sec. 1614.101 et seq and 29 CFR Sec. 1614.407.


6. Plaintiff filed her original complaint on April 2018, second EEO complaint, and appeal filed in December 2018. *(The Counts in this complaint are not comprehensive or exhaustive of all experiences, but just a summary of major examples of Plaintiffs experiences and enough to establish a prima facie case that outline enough information to describe complaint circumstances.*

### COUNT I & COUNT II

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

## TITLE VII DISCRIMINATION BASED ON RELIGION  & ADA DISCRIMINATION

7. As herein alleged, the Defendants, by and through its officers, managing agents and/or its supervisors, illegally and unjustly subjected Plaintiff to adverse employment terms, applying for jobs, using web application to apply for jobs, including hiring, job placement, training, pay, mentoring, promotions, accommodations, work benifits, unjust scrutiny, unwanted harassment, derisive comments and humiliation, in violation of Title VII, aforementioned discrimination based on religion and disability against plaintiff, Agency subjected Plaintiff to (1) disparate treatment and/or disparate impact; (2) she was subject to adverse employment conditions and actions; and (3) Herein included this complaint defendants did not comply with equal access of web applications and web application policies for disabled applicants for employment, for Plaintiff due to her disability and religion. (4) the all other circumstances surrounding the adverse employment conditions and actions give rise to inference of discrimination. Defendants had no legitimate reasons for any such act. Defendants violated each of the following in laws in the process including Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, as codified, 42 U.S. Code sec 12101; 42 U.S.C. sec 12111 to 12117; and sections 501, 504, 505, and 508 of the Rehabilitation Act of 1973; the First Amendment-Amendment I and Executive Order(s) 13548, 13078, 13124, 13163, 13164; Equal Employment Opportunity Management Directive 715 5 U.S. Code sec 2302.


8. Plaintiff has (3 to 5) years of equivalent research experience, including (2 to 4) years of supervisory level experience managing 15 to 30 employees at one time, which qualifies Plaintiff for entry level positions and promotions. Additionally, Plaintiff has a Masters in Sociology, and

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

valuable language skills needed to conduct the 2020 Decennial. (1) The plaintiff is an individual with a disability "PTSD, Anxiety Disorder, ADHD" that limits at least one or more major life activities ; (2) plaintiff is a "qualified person with a disability" for the position held and/or desired; (3) plaintiff can perform the essential functions of the position held and/or desired with or without proper accommodations.(4) Plaintiff is a musim who is publicly open about her religious identity due to often wearing a muslim headscarf on and off in public for the past 15 years a right protected under the First Amendment. Plaintiff has every right to implicit association and the right to association and belief.

9. Defendant posted a clerk position "open to the public" in the fall of 2017 position closed to applicants in December 2017. Plaintiff applied for the positions in Fall of 2017. Plaintiff near that time accidentally tagged the HR lady on an email with her graduate institution for a school grievance that stated Plaintiff had PTSD and was muslim. Plaintiff was emailed by the defendants HR specialist at the Census acknowledging reading the email. Plaintiff apologized for the email and requested to be considered for a position due to qualifications. Plaintiff having applied for the job, was then not considered, or hired for the position, even though they were hiring 16 schedule A applicants for this position. In the EEO investigation agency stated they did not get any qualified applicants during that posting.

10. Defendant reposted the same clerk position in March of 2018, the posting states it is a "repost" of the clerk position in question. Defendant was looking to hire (16 to 22+) additional schedule A clerks for the upcoming 2020 decennial and at least (500,000+) other qualified staff

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

members from 2018 through 2020. Plaintiff reapplied for the reposted clerk position and contacted the defendants HR Specialist to tell her she would like to be considered for the job posting in which she is well qualified for and apologizing again for the email tag previously. (1) Plaintiff had difficulty applying using the USAJobs website due to the system not working properly; (2) Plaintiff explained she applied for the first posting for the position, further asked the HR Specialist for assistance and then was successful in reapplying for the repost also "open to the public". Plaintiff was then again not considered, or hired for the position. In the EEO investigation agency stated they did not get any qualified applicants during that posting.


11. Plaintiff then felt she had experienced discrimination based on disability (PTSD) and religion (Islam/Muslim) and proceeded to file an EEO complaint by phone March 2018.

12. The same night calling and filing the EEO complaint Plaintiff received an email that indicated the application status had changed. Plaintiff opened USAJobs and noticed the first original posting was altered from saying "open to the public" to "only for internal applicants". Plaintiff has video evidence of the posting before and after they altered the posting. Plaintiff also emailed herself a copy of the original job posting to herself before filing the EEO complaint. (1) The first job posting that had been closed for several months to new applicants when filing the EEO complaint; (2) and the first job posting had been immediately altered after plaintiff filed her EEO complaint; (3) Plaintiff days after informed the EEO intake counselor that this was "retaliation" the defendants EEO counselor then stated they have the right to change job postings anytime they want to and no one would ever know; (4) therefore, the Agency then concluding Plaintiff did not qualify, because, it was not open to the public. (5) "This policy" of altering a a job posting

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

after its closing date, or after disabled individuals file an EEO complaint limits access or disqualifies disabled applicants, also affecting the plaintiff from applying for jobs online in violation of the Rehabilitation Act Section 508 of equal access; and is a violation of other laws included in this complaint, including Title VII, ADA Law, Rehabilitation Law, and is (a) disparate treatment; and (b) the policy leads to disparate impact; (6) the action further is capricious and pretext to cover up said discrimination, and meant to prevent individuals with disability from equal accessability in applying. In the EEO investigation agency stated they did not get any qualified applicants during that posting for both postings. (7) **The agency indicated that it only has 1 individual there that has a targeted health condition (a serious psychological disability - coded as #91) representing only 0.09% of the total staff in the Chicago RO and RCC offices, that is 1 out of 111 staff members.** This is on the second EEO investigation ROI file. Indicating their failure to recruit, hire, retain disabled staff members and indicating their complete exclusion of disabled applicants in the hiring process.

13. Plaintiff reported to the EEO that agency staff altering the job posting is "retaliation" for filing complaint with EEO.

14. Further, Plaintiff was still not considered for the now listed 32 schedule A clerk positions even though the agency had not identified any other qualified applicants. After filing the EEO complaint Plaintiff provided the video evidence to the EEO office when filing the formal EEO complaint. Then Plaintiff was invited to an interview for the clerk position in or about May 2018. Plaintiff was then hired and started on July 27th, 2018. Further, Plaintiff did not drop the EEO

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

complaint, because she felt these actions were malfeasance and pernicious in order to coverup said discrimination. Due to participating in continued EEO activity after Plaintiff was hired, defendents then subjected her to prohibited harassment including intimidating plaintiff with police for engaging in protected activites, and defendent continued ADA discrimination during the 3.75 months she worked for defendant. Further in order for defendant to force Plaintiff's termination. Meanwhile the majority of the 32 clerk positions for the posted positions in which Plaintiff qualified for were still open to be filled, and while other positions plaintiff qualified for were still open to be filled.

### COUNT III
### ADA DISCRIMINATION, FAILURE TO ACCOMMODATE, & REHABILITATION ACT of 1973

15. As herein alleged, the Defendants, by and through its officers, managing agents and/or its supervisors, illegally subjected Plaintiff to prohibited hiring practices, prohibited disability discrimination, failed to accomidate, failed to continue to participate in the ongoing accomidation engagement process; by unjustly subjecting her to adverse employment terms, including hiring, job placement, training, pay, mentoring, promotions, accommodations, unjust scrutiny, harassment, derisive comments and humiliation against plaintiff. The Agency (1) failed to reasonably accommodate Complainant's disabilities; (2) she was subject to adverse employment conditions and actions; (3) the circumstances surrounding the adverse employment conditions and actions give rise to inference of discrimination; and (4) similarly situated staff from other religions, races, ethnicities, were not subject to adverse conditions and were treated more favorably. (5) the agency ignored accommodation request(s) from plaintiff and provided a fictitious accommodation that did not help plaintiff better do her job and would not be sufficient as an accommodation. Defendants had no legitimate reasons for any such act. Each said act of

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

disability discrimination is in violation of the Americans with Disabilities Act of 1990, as codified,

42 U.S. Code sec 12101; 42 U.S.C. sec 12111 to 12117, and sections 501, 504, 505, and 508

of the Rehabilitation Act of 1973; the First Amendment-Amendment I, and Executive Order(s)

13548, 13078, 13124, 13163, 13164; Equal Employment Opportunity Management Directive

715, and 5 U.S. Code sec 2302.

16. Plaintiff began her tenure in the 2020 Decennial Census Office on July 23rd, 2018, as the

only muslim and female wearing a muslim headscarf in the office. Plaintiff was also hired on at

the lowest rate for the position in which she was one of the most qualified candidates for the

said clerk positions. She complained about this, the agency also hired all other clerks at higher

rates and with better benifits. Two similarly situated clerks include a hispanic female with equal

education and experience as plaintiff and black man who had lower education attainment and

lower qualifications when hired the same time as Plaintiff. The pay rate complaint was never

resolved or rectified by defendants management staff, but was ignored.

17. During Plaintiff's employment she was subjected to constant inappropriate anti-muslim

sentiments, comments about her faith, muslim clothing, husbands immigration status, and

disability by co-workers/supervisors, snide remarks, frequent reprimands, being excluded from

group activities and trainings, not being provided a job description or policy manuals. Plaintiff

was treated poorly besides receiving less pay than other clerks, received less training and was

not provided mentorship, plaintiff was not treated as well as similarly situated staff, subjected to

adverse terms of employment, hiring, promotions, merit raises/bonuses, access to benefit

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

programs e.g. EAP program access and have severely disadvantaged Plaintiff compared to similarly situated employees that received systematically better treatment; Plaintiff did repeatedly complain about conditions and actions. Management never address or changed these conditions, defendant management prevented plaintiff from having equal opportunity in terms of employment.

18. Without informing plaintiff prior to her first day, plaintiff had been placed in a new position "recruiting clerk" not the position applied for on her first day July 23rd, 2018; (1) and was not provided a job description. (2) Plaintiff asked multiple times why she was in the recruiting clerk position but none of the managers replied to Plaintiffs questions, Plaintiff requested it finally from HRD in Washington DC that it was finally provided to her on or after October 19th, 2018; (3) and also Plaintiff made repeated requests for medical accommodation for "task training that include written and verbal instructions" and "to not be reprimanded unnecessarily" to avoid having disability related symptoms being triggered and exacerbated. These requests were ignored. (4) Plaintiff was not provided employment benifits information but told to figure out how to apply for health insurance on her own. (5) Plaintiff had to research on her own how to get the health insurance while she asked management staff how to sign up, they refused to show her, Staff stating "it's not her job to and that the director believes in new hires having the ability to find out that on their own that staff should not tell you because you should be able to do it on your own". (6) Plaintiff did research it and after 2 months finally got health insurance with the Census. (7) Since defendants never provided plaintiff with any job description or training for recruiting clerk after starting the position and plaintiff had no idea what her job description was

METCALF v. ROSS 11

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

or "essential functions" for her job. On October 19th when she finally got her job description Plaintiff learned the job description doesn't match the job she was placed in the position applied for either, nor was plaintiff assigned any of the task in her job description.

19. Plaintiff made her first request for medical accommodation late in around <u>September 2018</u> after not receiving any "recruiting trainings" or "task related training" for the "recruiting clerk" position. Plaintiff only received some orientation trainings in her first week at the Census. Plaintiff made this request due after having some barriers to completing her job tasks at her best ability due to a) being reprimanded repeatedly triggered her symptoms on multiple occasions making it harder to complete work tasks and causing plaintiff difficult symptoms that interfered with doing the tasks, b) Plaintiff was being reprimanded frequently by management for not completing work as verbally asked, management staff never provided any training on these tasks, nor did they provide clear written instructions for the tasks, c) plaintiff wanted accommodation to bypass reprimands that trigger disability related symptoms and d) this accommodation would make it so plaintiff could do a better job at completing required tasks for her job, thus also it would eliminate their need to reprimanded plaintiff. e) Plaintiff when reprimanded would have disability symptoms triggered causing an increase in symptoms, w/ somatic and cognitive issues, that would also hender the Plaintiff from doing her best at the job. f) Verbal requests made to defendants management whom entirely ignored her requests from September through forced resignation <u>"to not be reprimanded unnecessarily"</u> and to <u>"provide task training with written and verbal instructions"</u> by management staff. g) These frequent reprimands increased in severity for menial tasks and items after making an official request for

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

accommodation, this adverse treatment lead to plaintiff missing many days of work. Management staff then increasingly reprimanded plaintiff without any regard for the Plaintiffs well being making the plaintiff more ill, losing days of work and income, losing out on a positive work experience and more opportunities, missing work on top of making it hard to do her work. Other staff was not subjected to these reprimands for very minor issues. h) Plaintiff complained about this to defendants agency staff who did not investigate it nor was anything done. i) Plaintiffs request for accommodation further ignored.

20. Plaintiff the end of September through termination had made repeated requests both vaguely and clearly with (1) verbal requests and (2) in written requests for medical accommodation for management to "stop reprimanding her unnecessarily" and to provide clear "task training with written and verbal instructions" for her assigned work tasks, "time off for medical necessity for treatment and breaks when having symptoms", ALL request were ignored from September 2018 till forced resignation November 2018. Plaintiff believes managers deliberately subjected her to adverse conditions in order to harass her, in order to exasperate disability symptoms and deliberately never provided accommodation requested, and ultimately deny plaintiff from equal access to employment enjoyed by other staff members who do not have disabilities and are not muslim. And to force plaintiff to quit her job thus subjecting her to forced discharge.

21. Defendant rather than provide accommodation as plaintiff requested, defended decided to (1) moved Plaintiff to an isolated location in the office October 29th, 2018, located in the

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

"Geography" portion of the office and (2) removed all her assigned work tasks, (3) this is without

any collaboration with Plaintiff or (4) without proper evaluation of Plaintiffs ability to perform the

"essential functions" for the "10 to 30 tasks per day" plaintiff was performing prior to October

29th, 2019.  And nor was an evaluation done for the "essential functions" listed in the job

description. (5) Before October 29th, 2018, Plaintiff worked on average 10 to 30 tasks per day in

the recruiting clerk position, (6) they took all assigned tasks away and replaced them it with only

"ONE" task that took "five minutes" to complete every day. Defendants also (7) provided a white

noise machine only and called this accommodation. The accommodation not provided by

defendant include (8)  "not to be reprimanded unnecessarily", (9) "to provide task training with

clear written and verbal instructions", (10)  "time off for medical necessity, and for breaks for

symptoms" were never provided. After October 29th, 2018, only on one other time Plaintiff  was

shown how to update a database, but was only given the task one time ever and it took "one

hour". The accommodation requested by plaintiff (11) did not ask for her workload to be reduced

or dramatically decreased, (12)  these actions therefore are not an accommodation and are a

failure to provide accommodation. Further, (13) they did not discuss the decision to remove the

work tasks with Plaintiff, nor explain this decision to remove her from all her tasks. (14) Plaintiff

immediately complained about this "accommodation" to the Deciding Official and the HR  (15)

who ignored the repeated complaints about the accommodation. (16) Other staff did not have all

their tasks taken away but were given so much work they were not getting breaks as reported to

Plaintiff by clerk named Lillie. (17) The management continued to reprimand Plaintiff on October

31st, Novemebr 1st,  and November 6th, even though she had all her tasks taken away. (18) On

or about October 17th t here was a mandatory training for DAAPS refresher trainings  all clerks

METCALF v. ROSS 14

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

where plaintiff was sent the email to attend, which plaintiff attended the first day but was pulled out the second day and the managers tried to take away her manual stating they had better things for her to do. Then the director sent her to her desk not providing her any work to do other than to escort the cleaning lady for half an hour. All other clerks were allowed to attend. (19) <u>Accommodations they stated they provided did not help plaintiff better do her job tasks nor did it break the barriers to doing those tasks but created more problems. Taking away all work assignments and not replacing it with anything is not an accommodation.</u>

22. After October 29th, 2018 management moved Plaintiff to geography and Plaintiff complained about work conditions and the accommodation they provided, which complaints were never rectified by Census staff. Plaintiff continually asked questions about why she had her tasks taken away, she was still not provided task training with clear "written and verbal instructions" for her previous task workload or for the job description received October 19th, as requested for an accommodation and did not receive but only "ONE" new task that takes five minutes a day to complete assigned tasks. Moreover she was still being excluded from task trainings and work other clerks received. Plaintiff still received reprimands that triggered her symptoms. Plaintiff sat there her whole shift without any work tasks assigned the whole day, all day, everyday, after October 29th, 2018, even when she asked for tasks she was ignored. Again this is not an accommodation but failure to accommodate and meant to segregate plaintiff and prevent plaintiff from equal opportunities to work. No other staff members was subjected to this treatment.

63-2018-00121

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

23. After October 29th, 2018, Plaintiff was segregated to the geography area away from management and other clerks, so Plaintiff asked if she was able to sit in other quiet areas in the office, to do work on tasks she previously did when working on some tasks and defendants management response was "no, the accommodation is to stay in the geography area". The geography area is hidden in the office and far away from other clerks, and makes it easier to exclude plaintiff from trainings and projects other clerks worked on. At the same time, there were still many job openings, including clerk positions and higher level positions which Plaintiff qualified for, Plaintiff was still not provided trainings for recruiting tasks, nor provided mentoring like other clerks who got promotions in the same time frame Plaintiff worked there. Other clerks did not face the same issues but could move freely and sit anywhere in the office.

24. Clerks hired at or about the same time received training and mentoring from the directors; and were promoted in three months of their hire date from clerks to regional technicians a pay difference from $36,000 to $90,000 per year. A hispanic female had equal qualifications as Plaintiff and a black man who had lower qualifications. Plaintiff on the other hand was told that she did not qualify for these higher level positions and told they would not consider her for promotions and management still did not answer her question related to her higher salary rate, the plaintiff which was being paid the lowest rate for the clerk position in comparison to other clerks even being more qualified than most other clerks. Nor was she given opportunity to also be mentored and promoted like others, but rather excluded entirely.

METCALF v. ROSS 16

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

25. When moving Plaintiff to the geography area management also removed Plaintiff from access to the phone lines in recruiting and geography, shared drives, and took away her second monitor after moving Plaintiff to the geography area. They fixed the phone when plaintiff complained but it only let plaintiff call out and did not allow for incoming calls, where as before October 29th, 2018 plaintiff was accepting hundreds of phone calls and making hundreds of calls. They never provided her with her second computer screen they took away, after the complaint, and never restored her access to the drive. Other clerks did not have their second monitors taken away, nor were they removed from all the drives and phone lines.

26. Prior to October 29th, 2018, Plaintiff worked on 10 to 30 tasks per day with minimal problems; it was only when being reprimanded that symptoms were exasperated and that interfered with Plaintiffs work product, so it was not necessary to take away plaintiffs work tasks at all even if they moved her to a quiet area, the previous "geography clerk" that previously working from geography also worked on tasks from all areas including recruiting tasks with access to the recruiting drive and the recruiting phone line, she was allowed to move to sit in other areas to do work related tasks. Whereas Plaintiff adversely affected by this action of them taking away her work tasks. Plaintiff prior to October 29th, 2018, also worked on tasks while sitting in other areas on occasion including the Admin area and Area Field Management area. There were multiple locations where there was quite work space near to recruiting, "geography is as far away as you can get from recruiting" as one manager stated in her investigation response. There was (1) no explanation as to why Plaintiffs ability to move to other areas and sit in other quiet areas was then being restricted; (2) there was no evaluation of Plaintiffs ability to

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

perform the prior tasks or essential functions in order for management to take her tasks away. (3) Prior to their decision Plaintiff was not informed they would be taking away all her work tasks and it was not communicated that she would have her tasks taken away at any point in time and was not informed they would not be replaced with any new tasks. (4) Plaintiff views this as continued harrassment, discrimination, and a form of retaliation. (5) Retaliation for engaging in protected activities. (6) This is a failure to engage in the accommodation process, failure to accommodate, and/or denial of accommodation. (7) Plaintiff then complained to other staff along besides management about working conditions, harassment, and the faux accommodation. (8) management then gave plaintiff a negative performance review and threatened plaintiff with taking action against plaintiff.

27. On November 6th, 2018, complaints about her "faux accomidation" were still ingnored and not corrected after 7 days of the accomidation nor did management provided any comments; so Plaintiff called the EEO office to file complaint that she had not received an adequate accommodation and to complain about adverse conditions of continued discrimination, workplace hostility, and retaliation. After the call Defendant immediately subjected Plaintiff to retaliation (1) the director called plaintiff on the phone to demand *in a hostile tone*, that Plaintiff come to her office to see her, (2) Plaintiff was having anxiety symptoms after speaking with the EEO office, plaintiff then requested to take a break instead stating now is not a good time due to symptoms, (3) the director stated Plaintiff was not listening and following direct orders and further chastised Plaintiff stating she only gets two fifteen minutes breaks a day. (4) This was a refusal and denying accommodation that was approved "<u>to receive necessary breaks for</u>

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

symptoms". (5) Plaintiff had to call the HR department staff named Melissa to ask her to call and explain the accommodation approved to the director again, in order to ask for the break. (6) The HR staff member told Plaintiff to go ahead a take a break. (7) Then the director emailed the Plaintiff, the EEO officer, and the HR staff member stating she is already accommodating the plaintiff and had called plaintiff only to give her a copy of her orientation training schedule from July 2018 when she started. (8) The files attached were never presented to Plaintiff before and was black, the file was a blank training schedule. (9) Further, she ignored complaints about the accommodation she had provided and did not take action to correct the circumstances.

28. Plaintiff sought to see the EAP November 8th and 13th, 2018. (1) After the EAP appointment on November 8th, 2018 Plaintiff then ask director if she could get a new accommodation to "working remotely" due to not feeling safe at work due to the hostile work experiences, on October 10th management called police on plaintiff to intimidate her and the continued reprimands triggering Plaintiffs symptoms. (2) This request was ignored by defendants staff. Plaintiff was fearful due to being subjected too frequent reprimands and hostile treatment from October 3rd, 2018 through November 6th, 2018. (3) In retaliation the director would not allow the plaintiff to see the EAP on November 13th stating Plaintiff should go on her own time,(4) further the director stopped all communication with Plaintiff regarding the EAP after Plaintiff asked a few times more to go to her second EAP appointment. (5) In retaliation the accommodation previously approved was now being denied by defendant by not allowing Plaintiff time off for medical necessity. (6) Director denied plaintiff to go multiple times when plaintiff requested to go on November 13th, 2018.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

29. (1) The director never responded to and ignored plaintiffs questions or complaints related to ("the accommodation") after October 29th, 2018 and even after the EEO complaint filed on November 6th, 2018. (2) After November 8th, 2018 Plaintiff requested a new accommodation, and the director ignored request for accommodation to work from home in a remote position when Plaintiff felt unsafe to working in a hostile environment when police were being called on her, and (3) they forced plaintiff to quite by ignoring her and cutting off all communication with plaintiff, (4) while they had thousands of positions were still available which plaintiff qualifies for.(5) At this time during November 8th, 2018 until plaintiff left job, defendants managers never address the issue that made plaintiff feel unsafe at work when "police" were being called to the office on October 10th, 2018, defendent did not attempt to address this with plaintiff, nor did she report it to HR or higher level management that plaintiff felt unsafe for police being called to the office.

30. Further, (1) after November 13, 2018, the defendants staff, management, and director stopped all communication with Plaintiff and never spoke to her again during her time working there rather than making any attempt to resolve complaints about the accommodation and address police being called to the office, (2) essentially this action is to subjecting Plaintiff be afraid at work and to constructive discharge. (3) Defendants management did not attempt to save the employment relationship or to continue the accommodation engagement process, nor did they comment or communicate or answer complaints or questions related to receive accommodations or alleged related conditions, (4) no investigation was conducted by HR due to

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

the complaints about accommodation or alleged related conditions or harassment, and (5) there

was no attempt by defendants staff to continue engaging in the ongoing accommodation

process. (6) These actions infer failure to engage in the interactive engagement process

required by law. (7) These adverse conditions interfere with plaintiff's right to equal work under

the law stated in this complaint.

### COUNT IV
### PROHIBITED DISCRIMINATION/HOSTILE WORK ENVIRONMENT - HARASSMENT

31. As herein alleged, the Defendants, by and through its officers, managing agents and/or its

supervisors, subjected Plaintiff to prohibited discrimination and harassment by unjustly

subjecting her to adverse employment terms, including hiring, job placement, training, pay,

mentoring, promotions, unjust scrutiny, harassment, derisive comments and humiliation against

plaintiff (1) she was subject to adverse employment conditions and actions; (2) the

circumstances surrounding the adverse employment conditions and actions give rise to

inference of discrimination; (3) plaintiff was subject to unwelcome conduct; (4) the harassment

had the purpose or effect of unreasonably interfering with her work performance and/or created

an intimidating, hostil, or offensive work environment; (5) similarly situated staff were not subject

to adverse conditions and were treated more favorably; and (6) there is a basis for imputing

liability to the employer. Defendants had no legitimate reasons for any such act. Each said act

of prohibited discrimination and/or harassment and is in violation of Title VII of the Civil Rights

Act of 1964 and the Americans with Disabilities Act of 1990, as codified, 42 U.S. Code

sec 12101; 42 U.S.C. sec 12111 to 12117, and sections 501, 504, 505, and 508 of the

Rehabilitation Act of 1973;  the First Amendment-Amendment I, and Executive Order(s) 13548,

METCALF v. ROSS 21

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

13078, 13124, 13163, 13164; Equal Employment Opportunity Management Directive 715, 5

U.S. Code sec 2302, in violation of the No Fear Act and the Office of Inspector General Act.

32. Protected activities plaintiff engaged in was also was (1) requesting a medical accommodation, (2) engaging in EEO activities and (3) reporting prohibited practices. From September 2018 through forced termination. (4) Other clerks without dsiability and that were not muslim received mentoring, promotions, raises, were not subject to harassment, reprimands, segregation or exclusion as plaintiff was. (5) The new clerk that was to replace plaintiff made a facebook video to harass plaintiff was not disciplined for his actions and management ignored complaints by plaintiff when reporting such action, video is still up nearly 7 months later, he is still employed there while plaintiff was forced to quit her job. The supervisor stated in the EEO investigation he no longer works at the agency but his linkedin page states he is still working there.

33. Unwelcome comments and conduct include on 9/11 by management staff that never spoke to Plaintiff; management said, "they were upset about all the lives lost on 9/11" this was one of the only times this manager spoke to plaintiff. Carol an employee of 6 years and assistant to the director made multiple statements about plaintiffs faith and clothing; Carol said " she felt sorry for women in headscarves", "that immigrants are invading this country, they need to go home", "where is your husband from, why did he come to the USA?", "do you go to the mosque", "where do you go to the mosque", "you will have to support your husband since he is disabled", " people should not be hired at the census if they cannot read", "we hide job postings on USA

METCALF v. ROSS 22

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

jobs to avoid hiring the wrong people", "Mrs. Sanders will not provide an accommodation for a disability", "the newspaper job tasks are meant to be soul crushing", "the census is where people come to end their careers", " religious people are pedophiles", "we hide job postings because we would have to hire all veterans and they have PTSD and are crazy".

34. (1) October 3rd - Reprimand- Days after asking for a medical accommodation, defendants managers engaged in reprimanding Plaintiff in front of other staff, questioned why Plaintiff has PTSD, told Plaintiff that she has an attitude and that she does not need an accommodation and further warned Plaintiff to stop asking about an update about her accommodation request. This resulted in flairing Plaintiffs PTSD symptoms making her cry in front of everyone, and making her miss several days of work afterwards due to PTSD symptoms. (2) October 9th- Defendants Manager again reprimanded Plaintiff in front of staff for using her desk phone for 15 minutes on her lunch break for a personal call when her cell phone was dead, this was the first time using the office phone for something personal, plaintiff never was provided rules, but other staff were allowed to use their desk phones for personal matters. Plaintiff requested a policy manual and list of rules to avoid problems in the future, a policy manual was never provided. (3) October 9th- Plaintiff was informed she would be replaced by a new hired clerk, after plaintiff missed several days from PTSD symptoms after the reprimand on October 3rd. Plaintiff was then left of the organizational chart developed on October 5th, 2018 and the new clerk was added before his first day. (4) Plaintiff views the harassment as an attempt to force termination and retaliation for engaging in protected activities.

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

35. **October 10th 2018** - This week was the deadline for Plaintiff to file a lawsuit on her first

EEO complaint. Plaintiff entered the office on time for her tour of duty between 8 am to 8:30 am,

when Plaintiff walked up to her desk and before she could take off her coat, her supervisor

asked her if Plaintiff had a report ready for her in a harsh tone. Plaintiff had not been asked to

prepare any reports for this morning. Further,the supervisor reprimanded Plaintiff for not having

the report. Once Plaintiff was able to log onto her computer she contacted the HRD to follow-up

on her accommodation request and tagged the supervisor and director on the email. A few

hours afterwards the same day the director escorted a police officer into the office and walked

by Plaintiff, while walking by Plaintiff's supervisor ran over to join the director escorting the

police officer to her office, while walking by the director pointed Plaintiff out to the police officer

who looked Plaintiff up and down while walking by. A nearby staff member was shaking

nervously when she was looking at Plaintiff after seeing the police officer escorted into the

director's office. (Plaintiff believes this is harassment to desuad plaintiff from engaging in

protected activities). Plaintiff had not been provided a policy book or information where to report

prohibited harassment, so she reported this incident to HR staff members , OIG, EEO staff,the

EAP, and OCR at the DOC/Census by phone and emails. Plaintiff also complained to the

director about this. Further, this complaint was ignored resulting in Plaintiff to fear for her life and

making her feel unsafe at work. (1) plaintiff reported these events and no one investigated them

(2) complaints were ignored. **FACT: The second ROI for the second EEO complaint**

**defendants manager who was involved states Plaintiff never complained about police**

**being called on her, however there are multiple emails addressing this issue sent by**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

**plaintiff. Defendant manager even submitted evidence to the EEO investigator that admitted she knew plaintiff was complaining about police being called.**

36. (1) October 22 - The Administrative manager walks by the recruiting area and states that if someone doesn't want to work for the Census they know where USAJobs is at, Plaintiff's supervisor shakes head and looks at Plaintiff. Plaintiff reported this to the director who never followed-up with a response to plaintiff about the incident. During the EEO investigation director states she did follow up with the administrative manager and confirmed he did state this, however, she never followed-up with Plaintiff after the incident. (2) Further, October 17- 23rd there was DAAPS refresher training, Plaintiff was to attend this training, emails were sent to Plaintiff stating it was mandatory and it was mandatory for all clerks, Plaintiff was included the first day, the second day Plaintiff was pulled out by defendants managers who then excluded Plaintiff, and they tried to take her DAAPS manual away, and she was sent to her desk and not given any work to do that day other than escorting the cleaning lady. (3) From October 17 through November 11th, all clerks worked on DAAPS in interviewing and hiring RA's, plaintiff was further excluded even after being moved to the geography department and was not given any tasks to do while all other clerks were included.

37. November 13th - Plaintiff sought to see EAP (1) November 8th Plaintiff was allowed to see the EAP during her tour of duty, she had requested to see the EAP again November 13th, 2018. (2) Between November 8th and November 13th Plaintiff had requested the director to provide a new accommodation due to not feeling safe at work. (3) In retaliation, on the morning of

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

November 13th, 2018, defendants director refused to let Plaintiff go to her second EAP appointment. (4) Plaintiff had no work assignments other than one assignment that takes 5 minutes per day and had time to go. (6) The director, then stated Plaintiff could not attend EAP via email stating she needed to go on her own time. Plaintiff responded stating the EAP in only open during office hours and during her tour of duty only, (7) further the director, refused plaintiff to go to the EAP by stopping correspondence with Plaintiff and sending a verbal messenger to tell her "no, she could not go". (8) After this the director stopped all forms of communication with Plaintiff for any reason and never corresponded with Plaintiff again during the rest of Plaintiffs employment with the Census. (9) Defendent also never spoke to plaintiff again about request for accommodation to work "remotely" due to safety concerns at work. (10) Plaintiff believes this is retaliation, continued discrimintion, forced termination, and failure to engage in the accommodation process due to plaintiff engaging in protected activities. .


38. Other forms of harassment -

Organizational chart - Plaintiff was completely left off the organizational chart October 5th 2019, she reported this to supervisors and no one ever responded to her. Her replacement was on the chart even though it was his first day of work. He was hired to replace Plaintiff rather than provide Plaintiff requested accommodations.

    a.  Job description - Plaintiff requested a job description and never received on until the end of October. Plaintiff had not known what were her jobs essential functions even if she wanted to make a more detailed accommodation request. Plaintiff was moved from

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

recruiting days afterwards and was never provided a new job description in the new area.

b. Newsletter - Plaintiff had her bio changed she submitted to be put in the newsletter, that took off her federal experience and by switching her graduate and undergraduate institutions.

c. Facebook posting - a staff member who posted a facebook and instagram video in harassment of Plaintiff complaining about harassment and filing an EEO complaint. Plaintiff reported this video to the director who did not do anything about the harassment.

**39. Other fact: Agency staff, directors, and management did not report complaints of harassment made by Plaintiff to higher management or HR, that stated agency managers called police on her in the office October 10th, 2018. Further, there were no investigation to address plaintiffs concerns, making Plaintiff feel fearful for her safety at work, further this was to interfere with plaintiff's ability to do her job. Management used the police to intimidate plaintiff for participating engaging in protected activities. There is direct evidence for this.**

40. Prohibited harrasment and retaliation (1) Plaintiff complained by email October 31st to three co-workers about discrimination, harrasment and the police being called on her and stated she was engaging in protected EEO activities. The new clerk shared this email with management. (2) October 31st management gives Plaintiff a negative performance review, plaintiff complained to the director about the review and (3) November 1st, the director emailed Plaintiff

METCALF v. ROSS 27

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

threatening taking actions against plaintiff for talking about her "participating in protected activities". (4) November 6th, 2018 a staff member who defendant stated was hired to replace plaintiff's job in recruiting rather than provide her accommodation, engaged Plaintiff to ask Plaintiff about her experiences and her EEO complaint resulting in the staff member further harassing the Plaintiff by making a facebook and instagram video talking about Plaintiff's complaint that is "open to the public and shows up on other staff's facebook". (5) Plaintiff seen this as inappropriate and harassment and reported this to the director. (6)The director never responded to Plaintiffs complaints, nor did any investigation, it is still online even months after no longer working there. (7) The director stated to the EEO investigator that she had not known about the video, however, Plaintiff had sent her emails reporting it to her. (8) Rosa Estrada also did not report that Plaintiff complained about police being called on her to her superiors or to HR. (9) No investigations were ever done on these items listed.

### COUNT V
### PROHIBITED RETALIATION

41. As herein alleged, the Defendants, by and through its officers, managing agents and/or its supervisors, illegally retaliated against Plaintiff by unjustly subjecting her to adverse employment terms, including hiring, job placement, training, pay, mentoring, promotions, unjust scrutiny, harassment, derisive comments and humiliation, solely because she had reported the aforementioned discrimination based on religion and disability, prohibited hiring practices, and prohibited harassment against plaintiff (1) she was subject to adverse employment conditions and actions; and (2) the circumstances surrounding the adverse employment conditions and actions give rise to inference of discrimination and retaliation. Defendants had no legitimate reasons for any such act. Each said act of retaliation is in violation of Title VII of the Civil Rights

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Act of 1964 and the Americans with Disabilities Act of 1990, as codified, 42 U.S. Code sec 12101; 42 U.S.C. sec 12111 to 12117, and sections 501, 504, 505, and 508 of the Rehabilitation Act of 1973; the First Amendment-Amendment I, and Executive Order(s) 13548, 13078, 13124, 13163, 13164; Equal Employment Opportunity Management Directive 715, 5 U.S. Code sec 2302, in violation of the No Fear Act and the Office of Inspector General Act.


42. The accommodation provided was inferencing retaliation (1) Plaintiff requested an accommodation at the end of September 2018 and formally the beginning of October 2018 to HRD. (2) On **October 29th, 2018** Plaintiff was informed that her request had been approved but they changed it to something different than what was requested by plaintiff that would not (a) help plaintiff better perform her job and eliminate barriers to doing her job (3) Plaintiff was told to clean her desk and move to geography where she would now sit in an isolated area and not allowed to sit in other areas that are also quite. (4) No other information was provided to Plaintiff about the accommodation, her job duties or any changes to her job duties, she was further taken off the phone lines both in recruiting and in geography, removed from the cloud drives in recruiting, and she had all her work tasks (10 to 30) taken away and was given one single task that takes five minutes per day. (5) Plaintiff complained repeatedly about this "accommodation" and stated  "it is not an accommodation" to take away all of the work tasks and place Plaintiff in a hidden area in the office and to further not provide requested task training and to continue to exclude Plaintiff from task or project training to the director who was the deciding official and the EEO office throughout the rest of Plaintiffs employment with the Census, this complaint was ignored. (6) Further, no evaluation was done of the ability of plaintiff to do the "essential

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

functions" of her job prior to see if plaintiff should have task taken away. (7) Plaintiff had never been assigned her tasks after again October 29th, 2018, besides sending one email report an activity that takes only 5 minutes to fullfill. (8) Plaintiff believes this is retaliation for engaging in protected activities.

43. **October 31st, 2018**, two days after moving plaintiff, (1) defendants management called Plaintiff over to her area in recruiting to do a performance evaluation, (2) defendants management did this in person in order to trigger plaintiffs disability symptoms rather than email it, (3) she gave Plaintiff a negative evaluation based on items Plaintiff requested an accommodation for, (4) she refused to let Plaintiff read it or to take a copy. (6) Defendants management never emailed a copy to plaintiff and (7) Plaintiff had to continually request a copy of this. (8) Plaintiff was finally given a copy of this after multiple requests, but defendants management delivered the performance review in person even though it was very far from her area on November 16th, 2018, again triggering her disability symptoms, rather than email it. (9) Plaintiff felt this reprimand done verbally and was meant to be retaliatory and hostile as management did it in person knowing it would impact Plaintiff's PTSD symptoms, she could have very well emailed it easily rather than to do it like this. (10) But rather she never emailed it. Plaintiff complained to the director who did not take any action or investigate complaints. (11) This action demonstrates retaliation for Plaintiff engaging in protected activities.

44. (1) **November 1st and 2nd**, Plaintiff missed work due to the reprimands by management that triggered her PTSD, (2) Plaintiff contacted the director and emailed her a doctors note. (3)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Plaintiff was never instructed who to correspond with, (4) The director then did not inform the supervisor in geography that Plaintiff was out due to illness. (5) The supervisor in geography emailed Plaintiff at home and asked why she has not called in to the office. (6) Plaintiff also called the director, both days November 1st and 2nd to inform her she was sick with PTSD symptoms, (7) On the phone call plaintiff asked the director how she can get a performance evaluation with no accommodation in recruiting before, she informed the director that she was not given a copy of the performance evaluation to read but was asked to sign it. (8) The director did not respond to this complaint. (9) This action demonstrates retaliation for Plaintiff engaging in protected activities.

45. (1) Plaintiff sent an email October 31st, 2018, to employees complaining about harassment, police being called, continued discrimination and reported EEO activity, and further complained to staff about treatment she had faced in the office. (2) A staff member forwarded the email to the director Rosa Estrada, according to his facebook video he made November 6th, 2018. (3) **November 1st, 2018**, the director sent an email warning plaintiff that she would take action against plaintiff is she didn't stop, not to talk about her circumstances. (4) Plaintiff didn't receive this email until she returned to work on or about November 6th, 2018. (5) This action demonstrates retaliation for Plaintiff engaging in protected activities.

46. (1) **November 6th, 2018**, Plaintiff complained again about not having any work assignments and having her work task taken away to the director who is the accommodation deciding official. (2) Before October 29th, Plaintiff worked on 10- 30 tasks at a time and often worked overtime and weekends, on projects from many areas besides recruiting even without

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

task training. (3) November 6th, 2018, Plaintiff proceeds to file an EEO complaint for discrimination after not recieving any work task assignments and having complaints about accomidation ignored. (4) Plaintiff contacted the EEO office to initiate a second EEO complaint. (5) After plaintiff contacted the EEO office the director called plaintiff on the phone demanding Plaintiff come to her office. (6) Plaintiff was having anxiety symptoms due to filing a complaint and the director had a harsh tone. Plaintiff stated now is not a good time and wanted to take a break due to anxiety. (7) The director further reprimanded Plaintiff for not coming to her office stating she only gets two fifteen minute breaks. Further, Plaintiff had to tell the director it was a part of the approved accommodation to receive a break when she was having symptoms. Plaintiff had to then contact the HR coordinator Melissa to have her contact the director to get a break. (8) The director responded with a follow email tagging the EEO official, HR staff, and Plaintiff stating she is providing accommodation and that she called Plaintiff because she only wanted to give Plaintiff a copy of a training schedule she should have received July 2018 when she started of orientation trainings, she did attach them and they were blank. (9) She could easily have emailed it anytime before that without calling Plaintiff to her office, but did not. (10) Plaintiff was fearful the director was trying to call police on her again to harass her, increasing her cognitive symptoms. (11) Further Defendant ignored complaint about accommodations provided. (12) This action demonstrates retaliation for Plaintiff engaging in protected activities.

47. **November 8th, 2018** (1) Plaintiff was permitted to go to the EAP at the end of the day during her tour of duty, (2) the EAP counselor had recommended working in a remote position as an accommodation since the management called the police on Plaintiff, (3) the EAP

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

counselor stated if Plaintiff felt unsafe to have a safety plan. (4)The director was informed of this by email and Plaintiff requested remote work as an accommodation, (5)The director ignored this request. (6) This action demonstrates retaliation for Plaintiff engaging in protected activities.

48. **November 13th, 2018** (1) after asking repeatedly to attend the EAP appointment that was requested in advance for November 13th, 2018, and (2) the director would NOT approve it or let Plaintiff attend her appointment (3) the director then completely stopped all correspondence with Plaintiff and never communicated with Plaintiff again during employment at the Census, plaintiff viewed this as constructive discharge. (4) This action demonstrates retaliation for Plaintiff engaging in protected activities.

49. The Defendant, staff, managers, failed to respond to complaints about accommodation and to address complaints, and to take action to correct accommodations. This action demonstrates retaliation for Plaintiff engaging in protected activities.

50. (1) The defendants, staff, managers, failed to report prohibited harassment, investigate it, or to take corrective action, when plaintiff brought it to their attention (e.g. facebook posting and police being called to the office). (2) Agency staff and management did not report complaints of harassment made by Plaintiff that state agency managers called police on her in the office October 10th, 2018. (3) Further, no investigation nor did they address plaintiffs concerns, making Plaintiff feel fearful for her safety at work. (4) Management used police to intimidate plaintiff for participating in protected activities. (5) This action demonstrates retaliation for

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

Plaintiff engaging in protected activities. *Plaintiff has direct evidence from the ROI declarations and emails.* (See statements made to EEO investigator about Police being called to office by Rosa Estrada, Marilyn Sanders, and Alicia Daniels, video of HR call with Plaintiff in 2019).


51. (1) Rather than respond to plaintiff's concerns **November 13th, 2018** request to see the EAP, that point in time forward there was no correspondence or communication with plaintiff to answer her questions, complaints, concerns, or requests for new accommodation. (2) Plaintiff asked then to see and receive a copy of her personnel file and later after leaving the Census she even requested a FOIA request on multiple occasions, both before resignation and after resignation and have not received a copy, other questions related to plaintiffs employment, accommodation requests on November 8th, 2018 for remote work have not been answered. (4) Plaintiff has also made FOIA request for supportive evidence of plaintiff's experience for dates reflected in this complaint including, emails, HR investigations, surveillance video, recorded calls, these items have still not be fulfilled. (3) The non fulfillment of FOIA request in this action demonstrates retaliation for Plaintiff engaging in protected activities.


52. Conclusively, the defendant did failed to engage in the interactive accommodation process during Plaintiff's employment entirely, but rather than providing adequate accommodations subjected plaintiff to prohibited harassment and desperate treatment in retaliation for EEO activity, and subjected plaintiff to forced constructive discharge for having disability (PTSD, Anxiety Disorder, ADHD), and for her religion (Islam/ Muslim) wearing a muslim "woman's" headscarf. Agency officials comment in investigation reports about plaintiffs being muslim

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

frequently while answering questions that indicate their actions are based on religious identity and plaintiffs faith. This action demonstrates retaliation for Plaintiff engaging in protected activities.

53. (1) Plaintiff since **March 2019** has applied to many positions and requested mediation to reinstate plaintiff in a remote position in which Plaintiff qualifies for that is located out of a different regional office. (2) The agency canceled 6 of the applications plaintiff applied ot on USA jobs under nefarious terms on the same day she received the agencies second ROI **June 14, 2018.** (3) Plaintiff had requested an update to her accommodation request and reinstatement request and has not received an answer other than from Barbara Toy who states that the agency has not responded. (4) Plaintiff contacted agency Schedule A staff and asked for assistance and more information on how to apply for jobs or if she can get assistance for jobs and explained her experience at the agency with USAJobs and EEO activity, plaintiff has not received a response. The Census needs around 500,000 employees to conduct the 2020 Decennial, the Plaintiff qualifies for most of the positions available. (5) Agency staff further have ignored request for further assistance for applying for jobs on USAjobs nor provided information on the Schedule A program. (6)This action demonstrates retaliation for Plaintiff engaging in protected activities. Plaintiff did make a video to document the 6 canceled applications that were canceled by the agency staff on **6/14/2018** the same day she received her second ROI. Further, in violation of the ADA and Rehabilitation Act Section(s), 501, 504, and 508, which will create Desperate Treatment and Disparate Impact when they bypass laws and regulations that make it harder for disabled individuals access to applying. (7) Further, the agency has no desire to

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

engage in EEO activity to resolve violations of TITLE VII, ADA, the Rehabilitation with plaintiff
and have demonstrated exhausting administrative duty to resolve through the EEO process by
ignoring plaintiffs requests for assistance and request for reinstatement, for a remote position
located from another office, when they need to hire 500,000 staff members. (8) The 2010
Decennial at the same time now ten years ago had already fully hired 65,000 employees while
the agency today June 2019 has only hired around 3,000 to conduct the decennial meaning
they are currently understaffed as well, the economy has a low unemployment rate making it
harder to recruit qualified candidates. Meaning they are deliberarly opposed to hiring a
AMERICAN MUSLIM woman in headscards and disabled individual. (9) Side fact, Plaintiff
despite being disabled has a higher level education in the field of social science research than
most of the management staff and is highly qualified for jobs. (10) Plaintiff has tried to request
assistance in applying and information on the Schedule A Program June 2019 since she had
never been provided this information and still has not received an answer from management or
agency staff contacted.

### COUNT VI & COUNT VII
### NO FEAR ACT VIOLATION FOR PROTECTED ACTIVITIES
### INSPECTOR GENERAL ACT VIOLATION FOR PROTECTED ACTIVITIES

54. Plaintiff believes that management staff called police on Plaintiff in partial motivation in
retaliation because plaintiff reported in late September 2018 and October 2nd, 2018, the
prohibited hiring practices to the Inspector General and various other offices; and the Plaintiff
also reported when police were called on plaintiff to the Office of Inspector General on October
10, 2018. They did not EVER investigate this matter, but ignored the reports and complaints by
plaintiff. The defendant's staff wanted to interfere with plaintiffs' participation in protected

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

activities and to interfere with plaintiff's ability to do her job. Plaintiff reported prohibited hiring practices to the Office of Inspector General and she also reported the police being called on her to the Office of Inspector General after asking for an update to her accommodation request and in the same time frame reporting prohibited hiring practices. Further, plaintiff experienced this retaliation for engaging in protected activities and agency ignored complaints.

### COUNT VIII
### THE FIRST AMENDMENT- AMENDMENT I

(1) Defendents adverse actions were in part protests to religious expression of plaintiffs very open and public expression identifying as a muslim follower of Islam beliefs of assiciaton by faith due to wearing a muslim headscarf, many instances throughout her attempts to get hired she mentioned she was muslim and also worked wearing a headscarf in public. (2) In addition to violating other statues mentioned in this complaint, defendents stated in the second investigation of the EEO office, with repeated negative toned remarks or objections to plaintiff being openly muslim and also being openly muslim wearing a headscarf, rather than answering questions. It is pretextual to violation of the first amendment when they subjected plaintiff to adverse conditions because of public religious identity, expression, association thereof, and religious practice, which violates the first amendment. (3)The government nor representative shall make any laws or policy prohibiting religious expression or practice or favor one religion over another. (4) All management staff and those stated in this complaint that identified as Christians, including the director was also very open about being a Christian Pastor, One manager named Kazeem converted to Christianity from Islam and was hired on as a manager and was very open about this fact in the breakroom when telling Plaintiff his religious views and conversion story, infront of many of the management staff and he did not face adverse

METCALF v. ROSS 37

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

conditons and all other staff hired predominantly was also Christian. (5) The management staff and subordinate staff in the office are all predominantly Christians were not subjected to the same treatment as plaintiff nor faced adverse conditions. (6) This defrintial treatement faced by plaintiff and prefrential treatment for Christians has an economicly negative impact on the plaintiff and for muslim women in general when they cannot enjoy live, liberty, and the persuit of happiness according to civil rights, as a whole if they are not able to practice their faith in public subjecting them to a life of poverty. (7) Further management of the Census especially the directors set the negative tone of exclusion during the Plaintiffs employment seeking process, employment, and afterwards, that infers defendants management did not want plaintiff respected, tolerated, included, visible, heard, to enjoy equal opportunities, or an included participant due to her very public expression of religion wearing a headscarf. (8) These actions are a direct violation for a government official(s) of the first amendment, this was done by ignoring plaintiff's requests for accommodation, ignoring questions about adverse conditions, ignoring harassment, by calling police in plaintiff, by not providing the personnel file as requested, not providing the personnel file even after making FOIA requests, and the agency has not fulfilling FOIA requests for plaintiff. (9) Adverse conditions Plaintiff faced, translates into officers of the government violating the first amendment in favor of one religion over the other. With their animous working to promoting one type religion over another, and to deny rights to others of other religions in this case "islam/muslims/wearing a headscarf" and public associaiton with the faith. (10) Plaintiff believes that FOIA request will identify this when emails are received because when talking with her supervisor about diversity, recruitment planning, and participation rates with a supervisor stated "Her and Mrs. Sanders follows the orders of Wilbur Ross", she

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

stated this in objection to my ideas on how to recruit more language speakers from marginalized communities. Plaintiff believes her supervisor stated this after Plaintiff was questioned Plaintiffs husband nationality and backstory, and when  Plaintiff told defendants staff was an arab immigrant. (11) Plaintiff has been subjected to economic hardship from this ongoing discrimination due to her public expression and her identifying as a muslim. The government in violation of the first admendment rights, in this practice and in policy is preventing qualified disabled individuals and a qualified muslim woman who wears a headscarfs to fully participate in economic life stated in the Fourteenth admendment; these adverse conditions cannot be tolerated in policy or practice by the United State government, by its agencies, or staff members.

**RELIEF DEMAND**

**WHEREFORE**, Plaintiff, Candace Metcalf demands judgment against the Defendants, in an amount which will compensate her for:

1. Violation of her rights under Title VII of the Civil Rights Act of 1964;

2. Violations of her rights under the Americans with Disabilities Act of 1990, as codified, 42 U.S. Code sec 12101; 42 U.S.C. sec 12111 to 12117, and sections 501, 504, 505, and 508 of the Rehabilitation Act of 1973.

3. Violations of her rights under Whistleblower Protections Federal Anti-Discrimination and Retaliation Act (No FEAR Act) took effect, Pub. L. No. 107-174; Section 205 of the No FEAR Act, neither the Act nor this notice creates, expands or reduces any rights otherwise available to any employee, former employee or applicant under the laws of the United States, including the provisions of law specified in 5 U.S.C. 2302(d). Retaliation against an employee or applicant for

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

making a protected disclosure is prohibited by 5 U.S.C. § 2301; 5 U.S.C. 2302(b) (8);5 CFR § 724.101; 5 CFR § 724.102; 5 CFR § 724.103; 5 CFR § 724.104 about prohibited hiring practice under 5 U.S. Code sec 2302.

4.  Violations of her rights under the Inspector General Act (5 USC Appendix 3, sec. 7) that prohibits reprisal against any employee for making a complaint or disclosing information to an Inspector General.

5. Violations of the First Amendment- Amendment I stating the government shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech/expression and they right to petition the government for a redress of grievances. Plaintiff had every right to implicit association and the right to association, expression in public of faith and public display of her belief.

6. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; physical pain, emotional distress and humiliation, past and future; and past and future medical expenses;

7. Punitive damages to punish the Defendant for its willful, wanton, oppressive,malicious, and/or grossly negligent conduct;

8. Reinstatement to a remote job position in a different region with other staff, and full accommodations for disability and religion. And a permanent injunction against future acts of discrimination and harassment against Plaintiff by Census Office Management staff;

9. Trial by jury on all issues so triable;

10. Costs expended herein, including reasonable attorneys' fees;

11. Pre-judgment and post-judgment interest; and

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

12. Any and all other relief to which she may be entitled; with full accommodation for her disability and religion.

### EVIDENCE STATEMENT

*Plaintiff does have direct video evidence, in addition to emails and documents. Plaintiff believes human rights, civil rights, are more important than protecting employers who discriminate. If no one is allowed to collect evidence in the process of their being discriminated against, well no one will change their illegal hiring practices or discriminatory practices, even the agency hired the Plaintiff after knowledge of first recording, recordings are strictly evidence of complaint and used only for protected activity of reporting violations of federal employment laws including Title VII, the ADA, and the Rehabilitation Act. Videos have only been shared with attorneys while seeking legal counsel and with the agency at this time. Video evidence is mostly recording of the online web application.*

Respectfully submitted,

s/Candace Metcalf
PRO SE (#)
5718 West 106th Street #2W
Chicago Ridge, IL, 60415
(708)789-3691
c.m.d.metcalf@gmail.com

### CERTIFICATE OF SERVICE

I hereby certify that on the ___9___ day of __July__ 2019, I filed the foregoing with the Clerk of the Court, which will send a notice to the following: Department of Commerce Representative for the Census Bureau .

s/Candace Metcalf
Candace Metcalf

METCALF v. ROSS 41

**Sender:**           c.m.d.metcalf@gmail.com
**Sent Date/Time:**   Mon, 8 Jul 2019 12:35:54 -0500
**Received Date/Time:** 2019.07.08 10:36:16
**Subject:**          Fwd: Follow-Up EEO Mediation: Metcalf
**Attached files:**


---------- Forwarded message ---------
From: **C. M.** <c.m.d.metcalf@gmail.com>
Date: Mon, Jul 8, 2019, 12:32 PM
Subject: Re: Follow-Up EEO Mediation: Metcalf
To: Toy, Barbara L (Federal) <BToy@doc.gov>


Barbara L,

I figured as much that I have not received a response now when I inquired about March of 2019 and have not heard anything back. As much, I also applied to several jobs which were remote and I qualified for they had canceled them all in one day on me. So it looks as if they are pretty dedicated to not considering me for employment. I just graduated with my masters and have a great work history so it is unfortunate really. Thanks for your help.

Kind regards
Candace Metcalf


On Mon, Jul 8, 2019, 10:40 AM Toy, Barbara L (Federal) <BToy@doc.gov> wrote:

> Good morning Ms. Metcalf,
>
>
> The agency informed me that they are not interested in mediating your workplace concerns at this time.
>
>
> Regards,
>
>
> Barbara Toy
>
> ADR Manager
>
> Client Services and Resolution Division
>
> Office of Civil Rights

202.482.8193

**From:** C. M. <c.m.d.metcalf@gmail.com>
**Sent:** Tuesday, May 14, 2019 6:18 PM
**To:** Toy, Barbara L (Federal) <BToy@doc.gov>
**Subject:** Re: Follow-Up EEO Mediation: Metcalf

Barbara L

Have you received any responses yet?? With request from mediation to be reintsated to a job in another location or work from home "remote position" as an accomidation, which I qualify for? It has been now over a month since contacting your office.

Thank you

Candace Metcalf

On Sun, Apr 28, 2019, 4:49 PM C. M. <c.m.d.metcalf@gmail.com> wrote:

Barbara L,

Thank you for your response, I truly appreciate your assistance in this matter.

Kind regards

Candace Metcalf

On Sun, Apr 28, 2019, 2:19 PM Toy, Barbara L (Federal) <BToy@doc.gov> wrote:

Ms. Metcalf,

I sent your mediation request to the agency, but I have not received a response yet. I will follow up and provide you with a response as soon as possible.


Thank you,


Barbara Toy


**From:** C. M. <c.m.d.metcalf@gmail.com>
**Sent:** Saturday, April 27, 2019 9:30 PM
**To:** Toy, Barbara L (Federal) <BToy@doc.gov>; Zanelotti, Sandra L (Federal) <sZanelot@doc.gov>
**Subject:** Fwd: Follow-Up EEO Mediation: Metcalf


Barbara L and Sandra L,


I have not heard back from you regarding a reinstatement to a possible position that I qualify for in another location not located in the Chicago region (preferably Washington DC). I have applied to many positions so far and some have stated they didn't have by degree on file even when it was a part of the application sent in, I deleted and tried to update my application then it stated another default message immediately afterwards stating I did not qualify. However I have applied to many positions.


Barbara when we spoke last you stated that you would get back to me within a week and I still have not heard from you. Please let me know what was the decision? If I could get an accommodation working from home or remotely that would be great then I won't have to deal with harassment when others (hate muslims or muslim women in headscarves) or disability harassment, discrimination, ableism or other types of unwarranted behavior.


As well, I have had the EAP try to contact me a few times from February 2019 to April 2019, I think around 3 times, I have called back and left messages each time but no one calls back in a timely manner. As well I am going to start seeing my doctors again hopefully once I get insurance, since working at the Census it has disrupted by health care and counselling and I truly would appreciate you asking for me as the mediator if I can still get these services or not? I am not sure what they want when they call they just state they are from EAP and want to follow-up on my experience and leave a message they called.

Also, I requested my personnel file multiple times, can you please get me a copy of this?

I have attached my degree and writing samples, examples of my work etc from my Masters Degree, Bachelors Degree, transcripts, letters of recommendation. As well I graduated in Fall of 2018 with a masters in sociology and 3.5 GPA-- hence the reason I applied for the clerk job at the Census to begin with and the great experience I had at the NORC @ the University of Chicago, the federal program I did with USAID VSFS, and Americorps VISTA.

Kind Regards,

Candace Metcalf

---------- Forwarded message ---------
From: **Toy, Barbara L (Federal)** <BToy@doc.gov>
Date: Wed, Apr 3, 2019 at 6:56 AM
Subject: RE: Follow-Up EEO Mediation: Metcalf
To: C. M. <c.m.d.metcalf@gmail.com>

Acknowledged

**From:** C. M. <c.m.d.metcalf@gmail.com>
**Sent:** Tuesday, April 2, 2019 9:25 PM
**To:** Toy, Barbara L (Federal) <BToy@doc.gov>; Zanelotti, Sandra L (Federal) <sZanelot@doc.gov>
**Subject:** Follow-Up EEO Mediation: Metcalf

Barbara,

I was able to apply to these positions. I would prefer if they would consider me for this position **Announcement Number:** ADDC-2019-0019, Survey Statistician, GG-1530-14, Census-DOC-TG, Located in Washington Navy Yard, DC, US or Suitland, MD, US. It is open to telework and I am able to work from home--preferably--so not to encounter the same types of difficulties with discrimination for my being Muslim and

from my PTSD issues (I can consider this an accommodation). However, if they prefer I am open to working from the office and will make all the arrangements for my own travel there upon reinstatement. I am highly qualified for this position with all the educational requirements and work experience necessary.

(https://careerconnector.jobs.treas.gov/doc/vacancy/viewVacancyDetail.hms?
 ref=vmtnru1npt0&jnum=119538&orgId=3 )


--

Kind regards,


*Candace Metcalf,*

Masters of Sociology 2018

Sam Houston State University

708.789.3691




📧 **Cover Letter -Metcalf**


📧 **Candace NORC resume**


📄 **Metcalf Agroterrorism Paper.pdf**


📄 **Program Evaluation Final-Candace Metcalf.docx**


📄 **SIA Project-Metcalf.docx**


📄 **Candace proposal final draft with edits (1).docx**

Candace proposal final draft with edits (1).docx

20170828 Candace Metcalf Letter of Recommendati...

Candace Metcalf letter of recommendation.pdf

Foreign Service Certificate.pdf

Letter from Foreign Service.pdf

Statistics Comp Exam-Metcalf.pdf

Nation Building.pdf

Militarization of Police-final write up.docx

Metcalf-Candace, Case Study 1.pdf

Keys to Democratization.pdf

Black-White Inequality1.pdf

W Exploratory Qualitative Research Project for Ar...

Religion-1.jpg

W Keys to Democratization.docx

slide-1-638.jpg

--

Best regards,

*Candace Metcalf,*

Masters of Sociology 2018

Sam Houston State University

708.789.3691

Catch me on twitter!



"*I believe that order is better than chaos, creation better than destruction. I prefer gentleness to violence, forgiveness to vendetta. On the whole I think knowledge is preferable to ignorance, and I am sure human sympathy is more valuable than ideology.*"

**—Leo Tolstoy**