**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **CANDACE METCALF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **No. 19 C 4623** |
| | ) | |
| **v.** | ) | **Magistrate Judge Jeffrey Cole** |
| | ) | |
| **WILBUR ROSS, et al.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

**INTRODUCTION**

The plaintiff has filed a motion to compel additional production of documents from the defendant in addition to the substantial volume of documents already produced. For the following reasons, the plaintiff's motion [Dkt. # 65] is denied, with one limited exception.

**A.**

This is a discrimination in the workplace case. The charges are disparate treatment, hostile workplace environment, and retaliation for complaining to the Census Office of Civil Rights and the EEOC. [Dkt. #1, ¶4]. Plaintiff identifies herself as a White, female, Muslim, who wears a headscarf, and who has PTSD, anxiety disorder, and ADHD. [Dkt. #1, ¶4]. Plaintiff worked for the defendant for just 3 months and 3 weeks, ending in November of 2018. [Dkt. #1, ¶1]. She alleges she was hired at a lower rate of pay than a Hispanic female with equal education and experience and a black male with less education and experience. [Dkt. #1, ¶. 16]. She claims she was subjected to unspecified anti-Muslim sentiments and not included in group activities and training, not provided mentorship, and not given a job description or policy manual until October 2018. [Dkt. #1, ¶. 17].

She was purportedly denied a medical accommodation of written and verbal training instead of merely verbal instructions and to not be reprimanded unnecessarily, and she had to figure out how to sign up for health insurance. [Dkt. #1, ¶. 19]. She charges she received only orientation training and verbal instructions and requested additional training and written instructions because she was being reprimanded for not completing her tasks. [Dkt. #1, ¶. 19]. She claims she only received the normal amount of breaks – two 15 minute breaks per day – despite her request for more as an "accommodation." [Dkt. #1, ¶. 27]. She alleges she was not allowed to work remotely even though she felt unsafe after a policeman was called into the office. [Dkt. #1, ¶¶ 28, 29]. Reprimands for failing to complete her work purportedly triggered plaintiff's alleged psychological symptoms. [Dkt. #1, ¶. 19].

Defendant placed her in a quiet part of the office, reduced her workload, and provided a white noise machine. [Dkt. #1, ¶. 20]. She claims she was not allowed to attend a refresher training. [Dkt. #1, ¶. 21]. As plaintiff depicts it in her Complaint, things progressed, and when she was finally called into the director's office – she was spoken to in a "hostile tone, again triggering her symptoms. [Dkt. #1, ¶. 27]. Management and staff, she asserts, began avoiding her altogether, and this eventually led to her "constructive discharge" in mid-November 2018. [Dkt. #1, ¶. 30]. For these four months or so, the defendant has produced 800 documents in discovery, covering thousands of pages. That seems a lot for a very brief period of time. But plaintiff thinks there must be more. That expansive production given the Complaint and time frame involved presents the opportunity to discuss proportionality and the eternal question posed in case after case of the American discovery system: "is that all there is? There must be more."

**B.**

The concept of proportionality in discovery has become significant. Fed.R.Civ.P. 26(b)(1). The rule dictates that discovery must be "proportional to the needs of the case, considering importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The concept did not make its first appearance in the Federal Rules of Civil Procedure with the 2015 Amendments. It originally appeared as part of Rule 26(b)(2)(C)(iii). *Henry v. Morgan's Hotel Grp., Inc.*, 2016 WL 303114 (S.D.N.Y. 2016); *Certain Underwriters at Lloyds v. Nat'l RR Passenger Corp.*, 318 F.R.D. 9, 14 (E.D.N.Y. 2016). Renumbering the proportionality requirement and placing it higher in Rule 26 was designed to put a greater emphasis on the need to achieve "proportionality" than was thought to previously have existed given its former placement in the structure of Rule 26. *Eramo v. Rolling Stone LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016). The renumbering of the proportionality requirement was thought to restore and emphasize the role proportionality was intended to and should play in discovery. *Boehringer Ingelheim Pharma GMBH & Co. KG v. Teva Pharm. USA, Inc.*, 2016 WL 11220848, at *3 (D.N.J. 2016). See the lengthy and informative discussion in Linda Simard, *Seeking Proportional Discovery: The Beginning of the End of Procedural Uniformity in Civil Rules*, 71 Vanderbilt L.Rev., 1919 (2018).

Proportionality, like other concepts, it is not self-defining; it requires a common sense and experiential assessment. *See, e.g., BankDirect Capital Fin., LLC v. Capital Premium Fin., Inc.*, 326 F.R.D. 171, 175 (N.D. Ill. 2018). Indeed, Chief Justice Roberts' 2015 Year-End Report on the Federal Judiciary noted that the addition of "proportionality" to Rule 26(b) "crystalize[d] the concept of *reasonable limits* on discovery through increased reliance on the *common-sense* concept of

proportionality." *Id.* (Emphasis supplied). The Chief Justice also stressed that "[t]he key here is careful and realistic assessment of actual need" that may "require the active involvement of ... the federal judge to guide decisions respecting the scope of discovery." *United States ex rel. Customs Fraud Investigations, LLC. v. Victaulic Co.*, 839 F.3d 242, 259 (3rd Cir. 2016).

For the most part, the discovery plaintiff *continues* to seek – remember, she has already gotten a significant amount – is out of proportion with the needs of the instant case and the history of discovery in this case. The right that plaintiff is seeking to enforce – to be free from discrimination on the basis of race, religion, and psychological impairments – is significant. But that does not mean discovery is limitless – to be limited only by the imagination and energy of the plaintiff. But there is the "right," and then there are the handful of alleged incidents and the exceedingly brief time period that is being litigated as emblematic and infringing of that right. *Saleh v. Pfister*, 2021 WL 326361, at *3 (N.D. Ill. 2021). The amount of discovery already produced ought to be sufficient to make out what seems a factually uncomplicated case about a few incidents occurring over a period of several weeks. But plaintiff insists there must be more; that defendant is hiding things. But "saying so doesn't make it so...". *United States v. 5443 Suffield Terrace, Skokie, Ill.,* 607 F.3d 504, 510 (7th Cir.2010); *Madlock v. WEC Energy Group, Inc.*, 885 F.3d 465, 473 (7th Cir. 2018). "Notably absent from these allegations, however, is any proposed proof that state actors, not municipal actors, were engaged in this *de facto* discrimination." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 770 (7th Cir. 2020); *Donald J. Trump for President, Inc. v. Secy of Pennsylvania*, 830 F. Appx 377, 381 (3d Cir. 2020)("Free, fair elections are the lifeblood of our democracy. Charges of unfairness are serious. But calling an election unfair does not make it so. Charges require specific allegations and then proof. We have neither here."). Even the Solicitor General's unsupported

4

assertions are not enough. *Digital Realty Trust, Inc. v. Somers*, _U.S._, 138 S.Ct. 767, 779 (2018)

[1] "Courts supervising discovery are often confronted by the claim that the production made is so paltry that there must be more that has not been produced or that was destroyed." *Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008). But that feeling is never enough. Courts do not accept mere speculation in a vague motion to compel. Discovery – long and mind-numbingly tedious enough as it often is – would never end if all it took to keep it going were the insistence that more documents exist. *Hubbard*, 247 F.R.D. at 29. Consequently, courts – with unerring consistency – have required that the moving party make out a case for more discovery. Insistence is not enough. The moving party must show that documents that have been produced permit a *reasonable* deduction that other documents may exist or did exist." *Hubbard*, 247 F.R.D. at 29 (Emphasis supplied). *See also, Gross v. Chapman*, 2020 WL 4336062, at *2 (N.D. Ill. 2020)("But, all that the plaintiffs provided here – in a motion barely 3 pages long – was mere speculation that there must be more texts about the breakup. Plaintiffs did not even cite a case in support of their motion to compel."); *Amarei v. City of Chicago*, 2016 WL 3693425, at *4 (N.D. Ill. 2016)(a court cannot compel plaintiff to produce what does not exist.); *Winiecki v. Creditors Interchange Receivable Mgmt., LLC*, 2015 WL 6870105, at *10 (N.D. Ill. 2015)(same); *In re Peregrine Fin. Grp. Customer Litig.*, 2015 WL 1344466, at *12 (N.D. Ill. 2015)(same); *Tijerina v. Stanley*, 2019 WL 1396964, at *4 (E.D. Tex. 2019)("... he asserts

---

[1]One may call these ubiquitous motions Peggy Lee motions. She had a Grammy Award-winning hit in 1969 with the Leiber-Stoller penned "Is That All There is?" It perfectly expresses the notion that many attorneys get in discovery as they sift through their opponent's document production:

> I had the feeling that something was missing
> I don't know what, but when it was over
> I said to myself, "is that all there is . . . ?

*See also* Thomas Mann's short story, "De Ontgoocheling," from seventy-five years earlier.

there were other medical records which would have supported all of his allegations; however, he offers nothing to suggest that any such records actually exist."); *Bos. v. Club Corp. USA, Inc.*, 2019 WL 1873293, at *8 (C.D. Cal. 2019); *Kendle v. Whig Enterprises, LLC*, 2016 WL 898569, at *4 (S.D. Ohio 2016)("However, plaintiff may not successfully move to compel discovery on the basis of a mere suspicion that the producing party possesses additional information that it has failed to disclose."); *Harris v. Koenig*, 271 F.R.D. 356, 370 (D.D.C. 2010)("reasonable deduction" and not a mere hunch is necessary).

But speculation is all we have here. Plaintiff offers nothing even to suggest what she is seeking exists, or is proportional to the needs of the case or, in some instances, is even relevant.

### C.

All this brings us to the overarching factor in discovery disputes: parties who cannot resolve their differences as Local Rule 37.2 hopefully envisions leave their issues to the broad discretion judges have in resolving discovery disputes. *Kuttner v. Zaruba*, 819 F.3d 970, 974 (7th Cir. 2016). That means there are no hard and fast rules. Indeed, two decision-makers—on virtually identical facts—can arrive at opposite conclusions, both of which constitute appropriate exercises of discretion. *See McCleskey v. Kemp*, 753 F.2d 877, 891 (11th Cir. 1985), *aff'd, McCleskey v. Kemp*, 481 U.S. 279, 289-290 (1987). Accord *Mejia v. Cook County, Ill.*, 650 F.3d 631, 635 (7th Cir. 2011). *Cf. United States v. Bullion*, 466 F.3d 574, 577 (7th Cir. 2006)(Posner, J.)("The striking of a balance of uncertainties can rarely be deemed unreasonable...."); *Elliot v. Mission Trust Services*, LLC, 2015 WL 1567901, 4 (N.D. Ill. 2015). As a result, a party that obdurately maintains its position without budging could insist that it was "right," but find itself on the losing side when the matter comes before the court, and the court's vast discretion in overseeing discovery leads it to accept the other

side's "right" position. A negotiated outcome is more likely to give both sides a mutually satisfactory resolution.

Further, needlessly seeking a decision by the court leaves the loser with little recourse. The Seventh Circuit has said that, an exercise of discretion is not wrong unless "it strikes us as wrong with the force of a 5 week old, unrefrigerated, dead fish." *Industries, Inc. v. Centra 2000, Inc.*, 249 F.3d 625, 627 (7th Cir. 2001). *See also Weeks v. Samsung Heavy Indus. Co., Ltd.*, 126 F.3d 926, 943 (7th Cir. 1997)("The clear error standard means that the district court can overturn the magistrate judge's ruling only if [it] is left with the definite and firm conviction that a mistake has been made."). In more polite terms, an abuse of discretion occurs when no reasonable person could take the view of the district court. *U.S. v. Re*, 401 F.3d 828, 832 (7th Cir. 2005). Thus, it generally behooves parties to work out their issues with some give and take.

As can best be gleaned from the plaintiff's presentation, beyond a general vague dissatisfaction with the whole discovery and litigation process – she is not alone in that view, *see, e.g., Rossetto v. Pabst Brewing Co., Inc.,* 217 F.3d 539, 542 (7th Cir.2000)(Posner, J.)("...discovery, [is] the bane of modern litigation.") – there are a handful of specific items she feels are missing from defendant's production. First plaintiff repeatedly asserts that defendants do not want to produce the video from October 10, 2018. [Dkt. #65, at 16-17]. Apparently, plaintiff feels there was a surveillance video taken of the Census office during the time the "policeman" was walking through. She claimed at one point it would show: "Rosa [Estrada, the deputy regional director of the Chicago office where plaintiff worked], walking by me with an officer with her looking at me, with Alicia running over to join her, as they walk into her office and Carol shaking nervously as she looks at me."

Plaintiff ties the incident to her claim of having been "yelled at" that morning. [Dkt. #65-1, Page 189/208]. As plaintiff has been told in discovery, this was a federal protective service officer who had been called to the office for a meeting regarding a security assignment. [Dkt. #65-1, at Page 85/208; #71-10, at 15-16; #71-15, Page 5/8]. Indeed, production of emails shows the officer's arrival had nothing to do with plaintiff and nothing to do with that morning. It had been scheduled and postponed and rescheduled and well in advance of plaintiff being yelled at. [Dkt. #71-15]. It is not self-evident how this is relevant to any of her claims, and plaintiff offers no explanation in her motion. [Dkt. #65, at 11, 16, 17]. Accordingly, this portion of plaintiff's motion is denied.

Plaintiff demands personnel files for all relevant comparable employees – the position of clerk – particularly what she calls "reassignment documents." [Dkt. #65, at 18, 19]. The defendant has produced records related the employment of Melissa Martinez, Dion Dawson, Mala A. Bone-Pegues, Gabriela Williams, Debra Phillips-Carter, Linda French, Reginald Milam, and Kimberly Stephens. [Dkt. # ; #71-8, Page 9-19; #71-9, Page 7/10; #71-10, Page 97-152/161]. That certainly seems adequate and proportional to the case. Defendant is also endeavoring to locate the records for Shamiram William-Youkhanna, which plaintiff only requested about a week before she filed her motion to compel [Dkt.# 71, at 9 n.7] – thus making that aspect of her motion premature. Records of non-comparable individuals, like the assistant regional manager – who was not even plaintiff's supervisor – are not relevant to the similarly situated issue. The defendant has also produced records related to job postings, [Dkt. #71-5; #71-9, Page 4-5/10; #71-10, Page 152-161/161],[2] and has provided paper copies as plaintiff did not know how to open those files on her

---

[2] Plaintiff also demands what she refers to as a second job posting from March 2020 on Monster.gov and USAJobs. [Dkt. #65, at 17]. As the defendant has provided job postings for the pertinent period and it
(continued...)

computer. [Dkt. #71, at 8]. Records of reassignments of clerks to other areas of the office are not made. [Dkt. #71, at 7; #71-16, Page 4/12]. Defendant also produced long ago the organizational charts plaintiff now complains about, [Dkt. #71, at 3-4; 71-3, ¶. 7], and has provided paper copies as plaintiff did not know how to open those files on her computer. [Dkt. #71, at 8]. Accordingly, these portions of plaintiff's motion also must be denied.

Plaintiff asks for her personnel file [Dkt. #65, at 19], but those documents have been produced. [Dkt. #71-2; #71-17]. The second Report of Investigation, produced in defendant's initial disclosures, contains plaintiff's training records, policies, and performance evaluations. [Dkt. #71, at 3]. Obviously, given a 15-week tenure, plaintiff's personnel records are not as voluminous as plaintiff seems to wish. This portion of plaintiff's motion to compel is denied.

Plaintiff also wants a second deposition of Rosa Estrada [Dkt. #65, at 4, 19], the deputy regional director of the Chicago office where plaintiff worked. She concedes that her former attorney, who withdrew due to irreconcilable differences with plaintiff on December 24, 2020, after just seven months [Dkt. ## 45, 59], already deposed Ms. Estrada for two hours, But plaintiff says "[t]here are some questions missing in the deposition I would like to ask." [Dkt. #65, at 4]. But, she doesn't say what those might be and given the transcript, the questioning appears to have been more than thorough, all the way down to the picayune, such as whether people in the office ever gave plaintiff a dirty look. [Dkt. #71-10, Page 5/161]. Numerous cases require the denial of the motion. *Patton v. Indianapolis Pub. Sch. Bd.*, 276 F.3d 334, 339 (7th Cir. 2002)(rude or impolite interactions with co-workers generally insufficient to support a claim for hostile work environment); *Adam v.*

---

[2](...continued)
is not clear how a posting from 16 months after plaintiff's brief tenure might be relevant, that portion of her motion is denied.

*Obama for Am.*, 210 F. Supp. 3d 979, 990-91 (N.D. Ill. 2016)(dismissing hostile work environment claim despite allegations that supervisor pulled plaintiff's hair, inspected her scalp, and screamed at her on multiple occasions, and that other coworkers laughed at her, gave her dirty looks, and ostracized her); *Alanis v. Metra*, No. 13 CV 5962, 2016 WL 464043, at *8 (N.D. Ill. 2016)(dirty looks, ostracization, and refusal to accommodate plaintiff's aversion to odors for staff meetings not objectively abusive in the sense prohibited by the hostile-environment doctrine).

In order to put a witness through a second deposition, courts require a clear showing of substantial need. *See* the discussion regarding renewed depositions in *Apollo v. Stasinopoulos*, 2021 WL 1414090 (N.D.Ill. 2021); *Am. Hardware Mfrs. Ass'n. v. Reed Elsevier, Inc*., 2007 WL 4224340, at *3 (N.D. Ill. 2007); *Lakewood Eng'g and Mfg. Co. v. Lasko Products, Inc*., 2003 WL 1220254 (N.D.Ill. 2003); *Watson v. Trevino*, 2006 WL 8432828, at *3 (E.D. Mich. 2006). Wanting to ask a few more questions obviously does not amount to the necessary showing, especially when plaintiff chose not to participate in/attend the first deposition (which was done remotely, over Zoom) and consult with her attorney if she thought he was missing something.

Finally, plaintiff complains that defendant has not responded to Interrogatory 18. [Dkt. #65, at 10]. Plaintiff does not cite to the Interrogatory anywhere in the 208-page exhibit she attached to her motion, but says it asks defendants to provide page numbers for the actual documents they claim to have produced. It's not clear what plaintiff is driving at here, and defendant's failure to address this complaint is understandable given the manner in which plaintiff has presented her discovery grievances. Fed.R.Civ.P. 34(b)(2)(E)(I) requires only that parties "must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." I assume the defendant's attorneys, experienced as they are, have

complied with the Rule in their production, and this quibble is perhaps the inevitable product of plaintiff's unfortunate falling out with her attorney.

Finally, there are added difficulties that come with litigating against a *pro se* opponent. *See, e.g.,* Michael Fridkin and Rachel Brady, *Playing on an Uneven Field: Litigating Against a Pro Se Opponent*, The Circuit Rider 17 (May 2015). Be that as it may, if they have not already done so, defendants must endeavor to correct this oversight. *See GJMS, LLC v. Hamstra Builders, Inc.*, 2019 WL 7763994, at *2 (N.D. Ind. 2019); *United States for Use & Benefit of A&C Constr. & Installation Co. WLL v. Zurich Am. Ins. Co.*, 2019 WL 195025, at *3 (N.D. Ill. 2019).

## CONCLUSION

This is not to say that defendants have been remiss in any way in their production. It is rather apparent that since parting ways with her attorney plaintiff is having perhaps understandable challenges sifting through the voluminous discovery the defendants have produced – discovery demanded by the plaintiff.[3] And, as she is proceeding *pro se*, those challenges are, at least in part, visited upon her opponent and the court. Still, it cannot be too often repeated, even *pro se* litigants must follow the rules. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Platt v. U.S.. Dept of Ed.*, 775 F.Appx. 253, 255 (7th Cir. 2019). For the foregoing reasons, the plaintiff's motion to compel [Dkt. #65] is denied.

---

[3] For example, plaintiff seems to have had a significant conflict with Ms. Estrada and focuses a fair amount of her attentions on her, not only for the FPS visit, but for failing to reply to some of her emails. [Dkt. #74, at 12,13,14]. Apparently, plaintiff sent Ms. Estrada emails referring her to her scholarly papers regarding the Muslim faith. [Dkt. #65-1, Page 88/208]. At her deposition, Ms. Estrada explained that she did not feel such emails required a response. [Dkt. #71-10, Dep., at 50-51]. Plaintiff argues in her reply brief, that these "explanatory" emails were never produced, but the defendants have indicated in their responses to requests that they were included in their initial disclosures. [Dkt. #65-1. Page 12-13/208]. However, plaintiff seems unable to locate them without a page number.

Parties may serve and file specific objections to this Order within 14 days after being served with a copy. Failure to raise objections in this manner waives the right to appeal. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); *Davis v. Kayira*, 938 F.3d 910, 917 (7th Cir. 2019); *Tumminaro v. Astrue*, 671 F.3d 629, 633 (7th Cir. 2011).

ENTERED: _____

UNITED STATES MAGISTRATE JUDGE

DATE: 4/22/21

12