## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CANDACE METCALF,<br><br>Plaintiff,<br><br>v.<br><br>GINA M. RAIMONDO, Secretary of the United States Department of Commerce,[1]<br><br>Defendant. | Case No. 19-cv-04623<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Candace Metcalf brings this employment discrimination action against the United States Department of Commerce Census Bureau. She was employed there as a temporary clerk for about four months in 2018. Metcalf brings a number of claims including for discriminatory treatment, hostile work environment, and retaliation. The parties have filed cross-motions for summary judgment. For the reasons stated below, Plaintiff's partial summary judgment motion [79] is denied and Defendant's motion for summary judgment [97] is granted.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a

---

[1] Secretary Gina Raimondo is substituted for former Secretary Wilbur Ross pursuant to Fed. R. Civ. P. 25(d).

1

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.* After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 250 (internal quotations omitted).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (internal citation and quotations omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 467 (7th Cir. 2020) (*citing Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted).

When cross-motions for summary judgment are filed, the Court construes all facts and draws all reasonable inferences in favor of the party against whom the motion was filed. *Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 849 F.3d 355, 361 (7th Cir. 2017); *see also Chagoya v. City of Chicago*, 992 F.3d 607, 615 (7th Cir.

2021). The Court treats the motions separately. *Marcatante v. City of Chi.*, 657 F.3d 433, 439 (7th Cir. 2011). *See also Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 416 (7th Cir. 2019) ("Each cross movant for summary judgment bears a respective burden to show no issue of material fact with respect to the claim.").

## BACKGROUND

### I. The Claims and Motions

In her Complaint (Dkt. 1), Metcalf alleges that she was discriminated against because of her religion, disability, and race, and that Defendant failed to provide her with a reasonable accommodation and retaliated against her. *Id.* ¶4.[2] She claims discrimination under Title VII based on religion (Count I) and disability discrimination (Count II). In Count III Metcalf claims failure to accommodate. Count IV is Metcalf's hostile work environment claim and Count V is her retaliation claim. Counts VI and VII are brought under the "No Fear Act" and "Inspector General Act." Count VIII is a First Amendment claim.

Defendant moves for summary judgment on all claims. Metcalf moves for partial summary judgment, though it is not entirely clear which claims she believes should be resolved in her favor now and which should proceed to trial. The Court interprets her motion as seeking summary judgment on her disability discrimination and retaliation claim, hostile work environment, and violation of the "No Fear Act," and asking that her remaining claims be tried by a jury. (*see* Dkt. 79 at 2, 5).

---

[2] Although her complaint contains a claim of discrimination based on her race (white), Metcalf's summary judgment filings do not address or develop this argument. That claim is waived. *See Palmer v. Marion Cty.,* 327 F.3d 588 (7th Cir. 2003); *Riley v. City of Kokomo*, 909 F.3d 182, 190 (7th Cir. 2018); *Montano v. City of Chicago*, 535 F.3d 558, 569 (7th Cir. 2008).

## II. Local Rule 56.1

Because Metcalf is *pro se*, the Court liberally construes her filings and draws reasonable inferences in her favor. At the same time, both Fed. R. Civ. P. 56(c) and Local Rule 56.1 required Metcalf to appropriately support and respond to factual assertions.[3] A number of Metcalf's responses are not responsive to Defendant's factual statements, contain new facts, fail to specify which portion of the statement is disputed or explain how cited evidentiary material controverts the asserted fact and/or make legal arguments. *See Welcher-Butler v. Brennan*, 619 F. App'x 550, 550 (7th Cir. 2015) ("The district court has discretion to demand strict compliance with its local rules…even *pro se* litigants must follow these rules.") (citations omitted); *Townsend v. Alexian Bros. Med. Ctr.*, 589 F. App'x 338, 339 (7th Cir. 2015) (same); *Arevalo-Carrasco v. Middleby Corp., Inc.*, 851 F. App'x 628, 629 (7th Cir. 2021) ("The [district] court was entitled to strictly enforce its local rules…We thus recount the facts as presented by the defendants, but in the light most favorable to [*pro se* plaintiff].") (citation omitted).[4]

---

[3] Defendant served on Metcalf a Local Rule 56.2 notice, explaining what Local Rule 56.1 requires of a *pro se* litigant opposing summary judgment. (Dkt. 100).

[4] Local Rule 56.1(e)(2) requires that each response to a statement of fact "admit the asserted fact, dispute the asserted fact, or admit in part and dispute in part the asserted fact. If the response admits in part and disputes in part the asserted fact, it must specify which part of the asserted fact is admitted and which part is disputed. A response may not set forth any new facts, meaning facts that are not fairly responsive to the asserted fact to which the response is made. A response may not assert legal arguments except to make an objection, including objections based on admissibility, materiality, or absence of evidentiary support." And under subpart (e)(3) of the local rule, "[t]o dispute an asserted fact, a party must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material."

The facts recounted below are either undisputed or as the Court will explain, they are deemed admitted because Metcalf's responses were deficient under the federal and local rules.

### III. Relevant Facts

Metcalf is a former employee of the U.S. Census Bureau, U.S. Department of Commerce, who worked at the Chicago Regional Census Center (Chicago RCC). DSOF (Dkt. 99) ¶ 3. She is a Muslim woman with posttraumatic stress disorder (PTSD). PSOF (Dkt. 79-1) ¶ 26. The U.S. Department of Commerce ("Defendant") is a part of the Executive Branch of the Federal government and is comprised of a number of bureaus and activities, one of which is the Bureau of the Census. DSOF ¶ 4.[5] The Census Bureau's field operations are conducted through six permanent Regional Offices (ROs), including the Chicago Regional Office. *Id*. On December 7, 2017, the Agency posted a Vacancy Announcement ("Vacancy Announcement A") for the position of Survey Clerk with the Chicago RO on USAJobs. *Id*. ¶ 5. The posting was for "Current Department of Commerce employees." *Id*. Metcalf applied for the Survey Clerk position listed at Vacancy Announcement A; at the time of her application, she was not an employee with the Agency. *Id*. ¶ 6. On December 13, 2017, Vacancy Announcement A closed. *Id*. ¶ 8. Metcalf was not selected under Vacancy Announcement A because she was not eligible as she was not a current employee of the Department. *Id*. ¶ 9.

---

[5] Metcalf explains in her response brief that she does not dispute DSOF ¶¶2, 4, 10, 12, 13, 26, 27, 38, and 51. (Dkt. 115 at 6).

On January 26, 2018, the Agency posted "Vacancy Announcement B" for the position of Clerk with the Chicago RCC on USAJobs. *Id*. ¶ 11. This vacancy was open only to current Census employees. *Id*. On or around this time, the Agency posted "Vacancy Announcement C", the corresponding, external listing to Vacancy Announcement B. *Id*. ¶ 12. Metcalf was able to apply to Vacancy Announcement C "with no problems." *Id*. ¶ 13. She did not apply to Vacancy Announcement B. *Id*. ¶ 14. Metcalf applied to and was selected under Vacancy Announcement C. *Id*. ¶ 15. On July 23, 2018, Metcalf was appointed to the temporary position of Clerk in the Chicago RCC; her appointment was set to expire on July 24, 2019. *Id*. ¶ 16.

From July 23, 2018 until October 28, 2018, Alicia Daniels, then Recruiting Coordinator, Chicago Regional Census Center, acted as Metcalf's first-line supervisor. *Id*. ¶ 18. From October 29, 2018 until November 25, 2018, Tong Zhou, then Geography Coordinator, Chicago Regional Census Center, was her first-line supervisor. *Id*. ¶ 19. At all relevant times, Rosa Estrada, then Assistant Regional Director in Chicago, was Metcalf's third-line supervisor. *Id*. ¶ 20.

On or around October 9, 2018, Dion Dawson was hired as a clerk in the Chicago RCC; Dawson was not brought on to replace Metcalf but as an addition to the team. *Id*. ¶ 28. On October 10, 2018, Estrada had a meeting with a representative from Federal Protective Services about setting up a meeting with the Regional Director on a security assessment for the building. *Id*. ¶ 29.

On September 18, 2018, Metcalf contacted the Reasonable Accommodations Branch to request reasonable accommodation forms. *Id*. ¶ 42. On September 26, 2018,

she sent a Request for Medical Information (RMI) Form to Ms. Gibson, Reasonable Accommodation Coordinator; on the Form, Metcalf's health care provider explained that she "may benefit from written instruction, a more flexible schedule or modified break schedule, organize her schedule through calendars, and tools to reduce lack of concentration such as sound proof headphones or white noise machines, etc." *Id*. ¶ 43. On October 3, 2018, Metcalf sent a completed Request for Reasonable Accommodation Form to Gibson, requesting: "1. Clear written and detailed instructions with detailed time expectations for…items. 2. Allow extra time to complete as necessary. 3. Allow breaks as necessary … 4. Allow reassignment as necessary…quiet place free from distractions." *Id*. ¶ 44; *see also* Dkt. 1-1, pp. 114-16. Gibson testified that Defendant "provided an alternative accommodation in moving her to the geography section," and while Metcalf "did not request this at the outset…I spoke with Ms. Metcalf about [the opening in the geography department]. It was different from her request. But it seemed like it would accommodate some of her concerns. And Ms. Metcalf agreed to it." *Id*. ¶ 46. On October 23, 2018, Gibson sent an email to Estrada regarding Metcalf's request for reasonable accommodation and provided an official recommendation. *Id*. ¶ 48.

On October 26, 2018, Gibson sent an email to Metcalf regarding her Official Notice of Reasonable Accommodation Approval and listing the approved accommodations. *Id*. ¶ 49. On October 29, 2018, Metcalf was moved to the Geography Department. *Id*. ¶ 23. Estrada testified that Metcalf was moved to Geography in order to accommodate her request. PSOF ¶ 30. On November 25, 2018, Metcalf resigned from her position;

the reason for resignation was listed as "Going back to University of Chicago." DSOF ¶ 53.

## ANALYSIS

### I.     Discrimination Based on Religion and Disability

To find discrimination, a reasonable factfinder must be able "to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action." *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016); *see also Arevalo-Carrasco*, 851 F. App'x at 630 ("To survive summary judgment, [plaintiff] needed evidence that a protected characteristic 'caused the discharge.'") (citation omitted). The Court asks "whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021). "One way of proving employment discrimination…remains the burden-shifting framework" of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 957.

Both parties rely on *McDonnell Douglas* so the Court will as well, but will also consider the evidence holistically. *See Chatman v. Bd. of Educ. of City of Chicago*, 5 F.4th 738, 746 (7th Cir. 2021). Metcalf appears to assert a failure-to-hire claim and a claim that she was discriminated against during the performance of her job. Under *McDonnell Douglas*, Metcalf must establish that "(1) she was a member of a protected class; (2) she applied for and was qualified for the position sought; (3) she was rejected for the position; and (4) the employer [hired] someone outside the protected group who was not better qualified than the plaintiff" *id.*, for the failure to hire claim. As to

8

the job discrimination claim, she must establish that "she performed reasonably on the job in accord with her employer['s] legitimate expectations; despite her reasonable performance, she was subjected to an adverse employment action; and similarly situated employees outside of her protected class were treated more favorably by the employer." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 225 (7th Cir. 2017) (cleaned up). Plaintiff must first make a *prima facie* showing, then the burden shifts to her employer to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *Chatman*, 5 F.4th at 746. At that point plaintiff may rebut the employer's purportedly legitimate purpose with evidence of pretext. *Id.*

Defendant does not dispute that Metcalf's religion and disability qualify her as a member of protected classes. Defendant argues, however, that there was no adverse employment action and even if there was, there is no evidence that it was caused by Metcalf's religion, disability, or protected activity. Defendant also contends that Metcalf failed to identify any similarly situated employee or to show that her supervisors' reasons for their actions were a pretext for discrimination or retaliation. The Court finds that Metcalf fails to offer evidence that she was subjected to an adverse employment action or that a similarly situated employee was treated more favorably.

### a. Adverse Employment Action

"At summary judgment, the critical question is whether the plaintiff has produced enough evidence to permit a reasonable factfinder to conclude that the plaintiff's race

or other proscribed factor caused the adverse employment action." *Chatman*, 5 F.4th at 746 (citations omitted). Metcalf's discrimination and retaliation claims require a showing that she suffered an adverse employment action. *See Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013); *Kurtzhals v. Cty. of Dunn*, 969 F.3d 725, 728 (7th Cir. 2020); *Johnson v. City of Chicago Bd. of Educ.*, 142 F. Supp. 3d 675, 682 (N.D. Ill. 2015); *Kurowski v. Shinseki*, 557 F. App'x 549, 553 (7th Cir. 2014).[6] A materially adverse employment action is an action that involves "a significant change in employment status," *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (citation omitted) and is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 780 (7th Cir. 2007) (citation omitted). Metcalf has numerous complaints about her treatment by Defendant but none rise to the level of an adverse employment action.[7]

### 1) Comments by co-workers and supervisors

Metcalf argues that co-workers made negative comments about her religion and that supervisors criticized her work performance and her interactions with other employees. For instance, she argues that she was "reprimanded for minor things" and Estrada warned her about sharing her employment information with other staff and also made "antimuslim animus comments". (Dkt. 115 at 9; PSOF ¶ 38). First,

---

[6] Because Metcalf relies on the ADA and Rehabilitation Act, the Court notes that "[c]laims under the Rehabilitation Act apply the same substantive standards as the [ADA]." *Kurowski*, 557 F. App'x at 552.

[7] A retaliation claim encompasses a wider range of "adverse actions" than discrimination claims. *Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 509 (7th Cir. 2020), reh'g denied (Jan. 7, 2021). The Court broadly construes Metcalf's claims of adverse actions for both her discrimination and retaliation claims.

however, "a negative evaluation or admonishment by an employer does not rise to the level of an adverse employment act." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004). "There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action; otherwise every reprimand or attempt to counsel an employee could form the basis of a federal suit." *Id. See also Burrell v. United Parcel Serv., Inc.*, 163 F. Supp. 3d 509, 526 (N.D. Ill. 2016) (an attendance warning was not an adverse employment action where it "did not result in any suspension, demotion, termination, loss in pay, loss of benefits, or any other change in [plaintiff's] employment"). Next, Metcalf's support for her claim that Estrada made "antimuslim animus comments" is Metcalf's own complaint (Dkt. 1). But she cannot "rest on the pleadings" on summary judgment. *Montano,* 535 F.3d at 569. Metcalf also cites Estrada's deposition, when Estrada was asked if she was aware of people making "derisive comments" about Metcalf's faith and Estrada responding that she saw "it in [Metcalf's] email." (Dkt. 115 at 9, 30; Estrada Dep. (Dkt. 79-2), pp. 58-60)). This is not evidence that Estrada made discriminatory comments about Metcalf's religion.

As to her co-workers, Metcalf argues that Carol Reckamp made offensive comments about her religion and clothing. Again she relies only on her complaint and does not cite admissible evidence. Even assuming co-workers made negative comments about Metcalf's religion or comments about her assignments, these also are not adverse employment actions. *See Brown v. Advoc. S. Suburban Hosp.*, 700 F.3d 1101, 1107 (7th Cir. 2012) ("Personality conflicts at work that generate

antipathy and snubbing by supervisors and co-workers are not" materially adverse employment actions) (cleaned up); *Stutler v. Illinois Dep't of Corr.*, 263 F.3d 698, 704 (7th Cir. 2001) ("ostracism by co-workers that did not result in material harm to the plaintiff was not enough to constitute an adverse employment action.").

### 2) **Move to geography branch**

Defendant moved Metcalf to the Geography Department in response to her accommodation request. An adverse action does not exist where there is "no reduction in pay and no more than a minor change in working conditions." *Williams v. Bristol-Myers Squibb Co.*, 85 F.3d 270, 274 (7th Cir. 1996). Metcalf does not assert that her pay or benefits decreased as a result of her move to the Geography Department. She argues instead that her assignments "were reduced enormously" and she was "removed from the phones." (Dkt. 115 at 21, 26). As evidentiary support, she cites Estrada's testimony in her declaration that Metcalf's "work did reduce because in geography it's a different environment and the type of work is different than recruiting." (Dkt. 79-2). Metcalf also cites certain responses by Defendant to her requests for admission (Nos. 29, 30, 31) (PSOF ¶ 33). But these responses address the accommodation she was provided. *E.g.* RFA ¶ 29 (Tong stating, "I was just told she was being transferred to geography. They told me she had asked for some accommodation."); ¶ 31 (Tong testifying, "I know she also received a white noise machine that was supposed to help her anxiety. So, she did get the accommodation."). *See Brown*, 700 F.3d at 1107 (rejecting argument unsupported by evidence about plaintiffs being denied favorable shifts and work assignments). And a "shift in the

balance of job responsibilities" is generally not an adverse employment action. *Pierri v. Medline Indus., Inc.*, 970 F.3d 803, 808 (7th Cir. 2020); *see also Nichols*, 510 F.3d at 780 (adverse employment action requires more than alteration of job responsibilities).

### 3) Hiring, promotion, training, evaluation

Metcalf makes a number of other arguments including that she was not hired under a particular posting, that other employees were hired at higher salaries and/or received promotions, that she was left off of an organizational chart, and that she was not given a job description or a copy of her performance evaluation.

Metcalf suggests Defendant altered a job posting and she was not hired under that posting. However she does not dispute that she was hired for the job in Vacancy Announcement C. Even if Metcalf is right that she should have been considered for a different posting, she does not explain how this is an adverse employment action. She also refers to other employees receiving promotions, but she does not present any evidence (or even argue) that she applied for or was eligible for a promotion in her four month tenure. In any event, to survive summary judgment on a failure to promote claim, a plaintiff must present "sufficient direct or circumstantial evidence that [the employer's] promotion decisions were intentionally discriminatory." *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 891 (7th Cir. 2016) (citation omitted)). She does not do so.

Metcalf also argues that she was excluded from training activities but even if that were the case, it does not constitute an adverse action. *See Williams v. City of*

13

*Chicago*, 2017 WL 3169065, at *4 (N.D. Ill. July 26, 2017). Metcalf's suggestion that Defendant gave Dawson all of her tasks is not supported by the evidence she cites, and it is undisputed that Dawson was not brought on to replace Metcalf but as an addition to the team. DSOF ¶ 28. Finally, Metcalf does not provide evidence to support her assertion that Melissa Martinez was hired at a higher salary than her. (*see* PSOF ¶ 13). To the contrary, Defendant's evidence shows Metcalf and Martinez were hired at the same salary. (Dkt. 118 ¶ 13).

None of Metcalf's arguments related to hiring, promotion, evaluation, training or the organizational chart rise to the level of materially adverse actions. *See Boss*, 816 F.3d at 917 (requiring "a significant change in employment status"); *Nichols,* 510 F.3d at 780 (adverse action must be "more disruptive than a mere inconvenience or an alteration of job responsibilities").

### 4) **Metcalf's claim that Defendant called the police on her**

Metcalf argues that Defendant called the police on her while she was employed there. However, it is undisputed that in October 2018, Estrada had a meeting unrelated to Metcalf with a representative from Federal Protective Services (FPS) about a security assessment for the building. DSOF ¶ 29. Metcalf cites no evidence connecting the FPS representative's presence in the office to her or any evidence that Defendant called the police on her. Metcalf's own speculation is not enough. *See Simpson v. Franciscan All., Inc.*, 827 F.3d 656, 663 (7th Cir. 2016) (""…speculation is insufficient."); *Widmar v. Sun Chem. Corp.*, 772 F.3d 457, 460 (7th Cir. 2014).

### 5) **Resignation**

On November 25, 2018, Metcalf resigned from her position. She contends, however, that she was constructively discharged—that Defendant "force[d] her to quit despite the defendants claims she resigned 'happily' from her job." (Dkt. 115 at 34). "Establishing constructive discharge is more difficult than establishing a hostile work environment. The failure of the latter thus dooms the former." *Ellis v. CCA of Tennessee LLC*, 650 F.3d 640, 650 (7th Cir. 2011). For the reasons discussed below, Metcalf has failed to establish a hostile work environment, and accordingly also cannot show that she was constructively discharged.

### b. Similarly Situated Comparator

Although Metcalf's failure to show she was subjected to an adverse employment action dooms her claims, the Court also addresses whether she has identified a similarly situated comparator.[8] For her *prima facie* case, Metcalf must identify "similarly situated employees outside of her protected class were treated more favorably by the employer." *David*, 846 F.3d at 225. Comparators must be "directly comparable in all material aspects." *Simpson*, 827 F.3d at 661.

Metcalf names Martinez, Sharmariam Williams, Kimberly Stephens, and Dawson. But she has not offered evidence that these are individuals outside of her protected class or that they were similarly situated in all material aspects. She contends that they were not disabled or of a different religion than her, citing only their "public linkedin profile[s]." (PSOF ¶ 25). In addition to the fact that she does

---

[8] "If the nonmoving party fails to establish the existence of an element essential to [her] case, one on which [s]he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019) (cleaned up). *See also Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 473 (7th Cir. 2002).

not actually provide the "linkedin profiles" as exhibits, Metcalf does not cite any authority that this is admissible evidence the Court can rely on at summary judgment to determine if these are appropriate comparators. Because she has failed to identify comparable employees who was treated more favorably, her discrimination claims fail. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015).

### c. The Evidence Considered Holistically Does Not Show Discrimination

Viewing the evidence as a whole (*Ortiz*, 834 F.3d at 766), a reasonable jury could not find that Metcalf's religion or disability led to any adverse employment action. Considering the types of circumstantial evidence Metcalf could rely on, she has not provided evidence to support an inference of intentional discrimination. *See Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020).

In sum, there is no question of fact for a jury and therefore Defendant is entitled to summary judgment on Metcalf's discrimination and retaliation claims.

## II. Hostile Work Environment

A plaintiff may claim hostile work environment under both Title VII and the ADA. *See Ford v. Marion Cty. Sheriff's Off.*, 942 F.3d 839, 852 (7th Cir. 2019). A workplace need not be "hellish" but "a hostile work environment must be so pervaded by discrimination that the terms and conditions of employment are altered." *Alamo v. Bliss*, 864 F.3d 541, 550 (7th Cir. 2017) (internal quotations, citations, and alteration omitted). "A hostile work environment exists when the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive

16

working environment." *Ford*, 942 F.3d at 851 (cleaned up). Relevant factors include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Alamo*, 864 F.3d at 550. To survive summary judgment, a plaintiff must provide evidence demonstrating that "(1) the work environment was both objectively and subjectively offensive; (2) the harassment was based on membership in a protected class or in retaliation for protected behavior; (3) the conduct was severe or pervasive; and (4) there is a basis for employer liability." *Boss*, 816 F.3d at 920.

A reasonable juror considering the evidence would not conclude that Metcalf was subjected to a hostile work environment. Metcalf argues that she was subjected to "antimuslim tropes in the management." But her support for this is her complaint in this case and her own email complaining of anti-muslim hostility, as discussed *supra* § I.a. She must show that her work environment was both subjectively *and objectively* offensive. *See Boss*, 816 F.3d at 920. Even if the record suggested Metcalf's co-workers made rude and insensitive comments, "general hostility and comments" are not sufficiently severe or pervasive. *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004); *see also Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018). Metcalf points to the police being called on her, but as discussed, it is undisputed that Estrada had a meeting with a Federal Protective Services representative to coordinate a security assessment for the building. DSOF ¶ 29. And Metcalf cited no evidence connecting this meeting to her or any evidence that Defendant called the police on her. Finally,

17

Metcalf makes no relevant connection between this case and the Department of Commerce Investigations and Threat Management Service (ITMS) report she attaches to her supplemental filings.

Metcalf has failed to provide evidence that her workplace was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ford*, 942 F.3d at 851. Defendant is accordingly entitled to summary judgment on Metcalf's hostile work environment claim.

## III.    Failure to Accommodate

Metcalf argues that Defendant failed to accommodate her disabilities. *See Youngman v. Peoria Cty.*, 947 F.3d 1037, 1042 (7th Cir. 2020) ("Discrimination [under the ADA] can take the form of treating a disabled employee differently from other workers or failing to make reasonable accommodations to the known limitations of the employee."). A failure to accommodate claim requires proof that "(1) plaintiff was a qualified individual with a disability; (2) defendant was aware of [her] disability; and (3) defendant failed to accommodate [her] disability reasonably." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). Although the first two elements are undisputed, Metcalf fails to show that there is any genuine issue of fact that Defendant failed to accommodate her disability. *See Youngman*, 947 F.3d at 1041 ("[Defendant] was entitled to summary judgment so long as [plaintiff] failed to

18

present evidence sufficient to create a dispute of material fact on any essential (and contested) element of his claim as to which he bears the burden of proof.").[9]

Here Defendant *did* provide Metcalf with an accommodation. The record reflects that Metcalf submitted a formal accommodation request, Defendant reviewed and responded to it, and provided an accommodation by, among other things, moving Metcalf to a different department, providing that when her medical impairment is active, she could take unplanned leave as needed, providing a white noise machine, and identifying a process for Metcalf to receive instructions from her supervisor. Metcalf complains that she was not provided with sufficient accommodations, but "it is the employer's prerogative to choose a reasonable accommodation; an employer is not required to provide the particular accommodation that an employee requests." *Igasaki*, 988 F.3d at 961 (cleaned up). *See also Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 683 (7th Cir. 2014) (plaintiff's "displeasure with the way in which [defendant] decided on that accommodation, or with its failure to provide the exact accommodation he would have preferred, is irrelevant.").

Summary judgment is granted to Defendant on Metcalf's failure to accommodate claim.

## IV.    Counts VI, VII, and VIII

The Bureau argues that Metcalf failed to respond to any of its arguments that Metcalf cannot bring claims under the Notification and Federal Employee Anti-

---

[9] To the extent Metcalf is arguing that the interactive process failed, "there is no independent cause of action for breakdown of the interactive process under the ADA." *Igasaki*, 988 F.3d at 961*; see also Williams v. Bd. of Educ. of City of Chicago*, 982 F.3d 495, 503 (7th Cir. 2020).

discrimination and Retaliation Act ("No FEAR Act"), 5 U.S.C. § 2301, the "Inspector General Act", 5 U.S.C. App. 3, § 1 *et seq.*, or the First Amendment.

As Defendant argued, Title VII "provides the exclusive judicial remedy for claims of discrimination in federal employment." *Johnson v. Lew*, 202 F. Supp. 3d 805, 809 (N.D. Ill. 2016) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 96 S. Ct. 1961, 48 L. Ed. 2d 402 (1976)). And the No FEAR Act does not provide a private right of action. *See Hardiman v. Lipnic*, 455 F. Supp. 3d 693, 698 (N.D. Ill. 2020). Metcalf does not cite any authority to counter Defendant's arguments about the No FEAR Act, the Inspector General Act or the First Amendment.

These claims are waived. "On summary judgment...the plaintiff can no longer rest on the pleadings...." *Montano,* 535 F.3d at 569; *see also Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 925 (7th Cir. 2019) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.") (cleaned up); *Mahran v. Advoc. Christ Med. Ctr.*, 12 F.4th 708, 713 (7th Cir. 2021) (same); *Riley*, 909 F.3d at 191 ("our adversary system relies on parties to raise issues and present them in the appropriate manner."); *see also Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (court "cannot fill the void by crafting arguments and performing the necessary legal research" for *pro se* litigant).

## CONCLUSION

For the stated reasons, Plaintiff's partial summary judgment motion [79] is denied. Defendant's motion for summary judgment [97] is granted. The Clerk is

directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case.

ENTER:

Dated: March 4, 2022

_____
MARY M. ROWLAND
United States District Judge